# United States Court of Appeals
## For the First Circuit

Nos. 09-2391, 10-1410

MARÍA D. PEÑALBERT-ROSA; SIRILO CORREA-ROSARIO;
CONJUGAL PARTNERSHIP CORREA-PEÑALBERT,

Plaintiffs, Appellants,

v.

LUIS G. FORTUÑO-BURSET, in his personal capacity and as Governor
of the Commonwealth of Puerto Rico; LUCÉ VELA, in her individual
capacity; VELMARIE BERLINGERI-MARÍN, in her individual and
official capacity as Administrator of the Governor's Mansion;
JUAN CARLOS BLANCO, in his individual and official capacity as
Chief of Staff; JOHN DOE; CONJUGAL PARTNERSHIP DOE-BERLINGERI;
JUANITA DOE; CONJUGAL PARTNERSHIP BLANCO-DOE; CONJUGAL
PARTNERSHIP FORTUÑO-VELA,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen C. Cerezo, U.S. District Judge]

Before
Boudin, Stahl and Howard,
Circuit Judges.

Carlos A. Del Valle Cruz with whom Eileen Landrón Guardiola,
Eduardo Vera Ramírez and Landrón & Vera, L.L.P. were on brief for
appellants.
Eliezer A. Aldarondo-López with whom Eliezer Aldarondo Ortiz,
María Hadad-Orta and Aldarondo & López Bras, PSC were on
consolidated brief for appellees.

January 28, 2011

**BOUDIN**, <u>Circuit Judge</u>.  María D. Peñalbert-Rosa was discharged from public employment in Puerto Rico in February 2009, shortly after the governorship of the Commonwealth changed hands from one political party to another.  According to her later complaint, Peñalbert had been employed since 2006 as a receptionist in an office building annexed to the Puerto Rico governor's executive mansion; from 1989 to 2006, she worked in a communications office within the same complex.  Neither position, she asserts, entailed formulating policy or handling confidential information.

The new governor, Luis Fortuño-Burset, candidate of the New Progressive Party ("NPP"), was elected in November 2008 and assumed office in January 2009.  Several weeks later, Peñalbert--a member of the Popular Democratic Party ("PDP")--received a letter terminating her employment.  The letter described her position as "one of trust" (that is, one subject to at-will termination under Puerto Rico law, P.R. Laws Ann. tit. 3, § 1465 (2006); <u>see</u> <u>Costa-Urena</u> v. <u>Segarra</u>, 590 F.3d 18, 22 (1st Cir. 2009)), but it contained no criticism of her work or explanation for her firing.

On April 16, 2009, Peñalbert brought the present civil rights action, 42 U.S.C. § 1983 (2006), alleging that the termination violated her federal constitutional rights to freedom of speech and association, due process, and equal protection; she also invoked supplemental federal jurisdiction over various claims

-2-

arising under Puerto Rico law. The complaint named as defendants Governor Fortuño; Fortuño's chief of staff, Juan Carlos Blanco; and the administrator of the governor's mansion, Velmarie Berlingeri-Marín--each in his or her individual and official capacities.

The central claim was that Fortuño and the two others fired Peñalbert because of her political affiliation to the PDP and gave her position to an NPP member. The complaint sought $1.5 million in compensatory damages as well as preliminary injunctive relief, which was denied. Ultimately, the district court dismissed the complaint for failure to state a claim under federal law, Fed. R. Civ. P. 12(b)(6); the claims under Puerto Rico law were dismissed without prejudice.

Peñalbert now appeals, focusing only on the political discrimination claim under the First Amendment and the denial of preliminary injunctive relief; she also says her local law claims should not have been dismissed with prejudice, but the district court dismissed them without prejudice. Our review of a judgment of dismissal for failure to state a claim under the federal statute is de novo, Morales-Tañon v. P.R. Elec. Power Auth., 524 F.3d 15, 18 (1st Cir. 2008), accepting the well-pleaded allegations of the complaint as true and drawing all reasonable inferences in Peñalbert's favor, Otero v. P.R. Indus. Comm'n, 441 F.3d 18, 20 (1st Cir. 2006).

As construed by several path-breaking decisions, the First Amendment prohibits government officials from taking adverse employment actions against public employees because of the employees' political affiliations, unless partisan considerations are a legitimate requirement for the position in question. Branti v. Finkel, 445 U.S. 507, 516-18 (1980); Elrod v. Burns, 427 U.S. 347, 372-73 (1976) (plurality opinion). Subject to the latter exception, the plaintiff meets the test by showing that political affiliation was a substantial or motivating factor in the employment decision. Montfort-Rodríguez v. Rey-Hernández, 504 F.3d 221, 224-25 (1st Cir. 2007).

The complaint adequately alleges a claim that someone discharged Peñalbert in violation of the First Amendment. Presumably, whoever discharged her was acting as a state actor, and no basis has yet been asserted for exempting Peñalbert from the protections of Branti and Elrod. While there may have been some reason independent of political party for the firing, the opposite inference may be drawn from the timing of the discharge, the lack of explanation and the replacement by a member of the opposing party.

The trouble with Peñalbert's complaint is not that the charge is implausible; political firings after elections in Puerto Rico are not uncommon. But, save under special conditions, an adequate complaint must include not only a plausible claim but also

a plausible defendant. Yet there is nothing in the complaint beyond raw speculation to suggest that the named defendants participated--either as perpetrators or accomplices--in the decision to dismiss Peñalbert.

To be sure, the complaint asserts that Governor Fortuño "approves or disapproves of all personnel decisions [at the governor's mansion], including the personnel decisions concerning the termination of [Peñalbert]"; that the two named subordinate officials "participated" in these decisions; that the defendants "knew or assumed" that Peñalbert belonged to the PDP "and/or" was not a member of the NPP; and ultimately that all three conspired to dismiss Peñalbert because she was a member of the PDP. All except that conspiracy charge are at least couched in factual terms.[1]

The plaintiff's factual allegations are ordinarily assumed to be true in passing on the adequacy of the complaint, which need not plead evidence. See, e.g., Sepúlveda-Villarini v. Dep't of Educ., Nos. 08-2283, 09-1801, 2010 WL 5093220, at *4 (1st Cir. Dec. 10, 2010); Sandler v. E. Airlines, Inc., 649 F.2d 19, 20 (1st Cir. 1981) (per curiam). But "ordinarily" does not mean "always": some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that

---

[1]The legal charge of conspiracy standing alone is inadequate. DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (alleged antitrust conspiracy). See generally 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 521 n.22 (3d ed. 2004) (collecting copious cases).

they fail to cross "the line between the conclusory and the factual." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 n.5 (2007).

Thus, in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the complaint charged that two high-ranking government officials knowingly condoned harsh detention conditions for the plaintiff "as a matter of policy, solely on account of [his] religion, race, and/or national origin," id. at 1944 (quoting complaint). Although this was patently a factual claim about the named defendants' state of mind, the Supreme Court held that the bare allegation of intent was inadequate absent more specific factual assertions:

> To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical. We do not so characterize them any more than the Court in Twombly rejected the plaintiffs' express allegation of "'a contract, combination or conspiracy to prevent competitive entry,'" because it thought that claim too chimerical to be maintained. It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.

Id. at 1951 (internal citation omitted).

Iqbal could be viewed as emergent law, see, e.g., 129 S. Ct. at 1961 (Souter, J., dissenting), but we ourselves had earlier said a complaint that rests on "bald assertions" and "unsupportable conclusions" may be subject to dismissal, Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996); and our decisions since Iqbal have

several times found unadorned factual assertions to be inadequate.[2] Without trying to lay down a mechanical rule, it is enough to say that sometimes a threadbare factual allegation bears insignia of its speculative character and, absent greater concreteness, invites an early challenge--which can be countered by a plaintiff's supplying of the missing detail.

Here, Peñalbert's complaint does allege that personnel decisions in the executive mansion are within the authority of the governor, but nothing beyond speculation supports the further assertion that the governor or his chief of staff participated in the decision to dismiss Peñalbert. Someone denominated the "administrator" of the governor's mansion might more plausibly be involved, but nothing in the complaint indicates the administrator's actual duties or that the administrator ordinarily passes on the selection or discharge of a receptionist.

A defendant could be liable, even without knowing of Peñalbert or her position, if (for example) on some generic basis that defendant authorized the impermissible firing of PDP supporters because of their party membership or beliefs. Cf.

---

[2]See Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (insufficiency, based on Iqbal, of conclusory assertion that prison administrators failed to supervise lower-level officials with "deliberate indifference and/or reckless disregard" to plaintiff's rights); Maldonado v. Fontanes, 568 F.3d 263, 274 (1st Cir. 2009) (insufficiency, based on Iqbal, of bare allegation that defendant mayor had "personally participated" in raids to corral and kill household pets in a public housing complex).

<u>Figueroa-Serrano</u> v. <u>Ramos-Alverio</u>, 221 F.3d 1, 8 (1st Cir. 2000) (discussing alleged statement by mayor of his "intention to rid City Hall of NPP employees"). But, again, mere possibility is not enough to state a claim and again no facts are stated in the complaint to show that in this instance any of the three gave such an order or that it is even plausible that they did.

If Peñalbert had any basis beyond speculation for charging any one of the named defendants with knowing participation in the wrong, it seems almost certain that this would have been mentioned--if not in the complaint at least in the opposition to the motion to dismiss. Specific information, even if not in the form of admissible evidence, would likely be enough at this stage; pure speculation is not. This may seem hard on a plaintiff who merely suspects wrongdoing, but even discovery requires a minimum showing and "fishing expeditions" are not permitted. <u>DM Research</u>, 170 F.3d at 55.

However, Peñalbert's position is in one respect different: the complaint adequately alleges--based on the non-conclusory facts already listed--that someone fired Peñalbert based on party membership. Of course, the factual allegations might be later undermined or countered by affirmative defenses, <u>e.g.</u>, <u>Cepero-Rivera</u> v. <u>Fagundo</u>, 414 F.3d 124, 132-33 (1st Cir. 2005); but at this stage the complaint adequately asserts a federal wrong by someone. So while the present complaint does not justify suit

-8-

against the defendants actually named, an avenue for discovery may be open.

A plaintiff who is unaware of the identity of the person who wronged her can sometimes proceed against a "John Doe" defendant as a placeholder.  E.g., Iqbal, 129 S. Ct. at 1943; Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 390 n.2 (1971); see also 5A Wright & Miller, supra note 1, § 1321, at 382 & n.6.[3]  We have previously condoned the device, at least when discovery is likely to reveal the identity of the correct defendant and good faith investigative efforts to do so have already failed.  See Martínez-Rivera v. Sánchez Ramos, 498 F.3d 3, 7-8 (1st Cir. 2007).

Whether Peñalbert could make such a showing is not clear from the face of her complaint, and she has not sought this "John Doe" alternative.  Rarely do we rescue a civil claim--even to the very limited extent now contemplated--on grounds not urged either on the district court or on us.  But Twombly and Iqbal are relatively recent; developing a workable distinction between "fact" and "speculation" is still a work in progress; and while upholding

---

[3]By coincidence, two "John Doe" allegations appear in the present complaint; the plaintiff did not know the names of two spouses of named defendants--often included in Puerto Rico cases for reasons that need not concern us--and so included them as "Juan Doe" and "Juanita Doe."  However, these are merely pseudonyms for two specific persons whose liability, if any, is derivative, and they are not a substitute for a "John Doe" claim against an unknown perpetrator.

the dismissal of the complaint against the named defendants, we think that the interests of justice warrant a remand to give Peñalbert a reasonable opportunity to move to amend the complaint to seek relief against a "John Doe" defendant. See Rivera-Gomez v. de Castro, 843 F.2d 631, 636 (1st Cir. 1988).

Peñalbert has also appealed from the denial of a preliminary injunction--a determination ordinarily reviewed only for abuse of discretion. See, e.g., Naser Jewelers, Inc. v. City of Concord, 513 F.3d 27, 32 (1st Cir. 2008). Given that the present complaint is inadequate to show liability on the part of any named defendant, the denial of the preliminary injunction can hardly be deemed error. If on remand Peñalbert is allowed to proceed on a "John Doe" basis, she is free to renew her motion for preliminary relief; whether such relief would be warranted at that stage, and against whom, are matters not now before us.

Accordingly, we affirm the dismissal of the complaint as to the named defendants and the denial of preliminary relief, but we remand the case to allow Peñalbert to move promptly to add a "John Doe" defendant. Each side shall bear its own costs on this appeal.

It is so ordered.