# United States Court of Appeals
## For the First Circuit

No. 09-2175

MIGUEL GUZMÁN-RIVERA,

Plaintiff, Appellant,

v.

KERMIT LUCENA-ZABALA; ZAIDA CAMACHO-ROSSY; ANABELLE NÚÑEZ-UBARRI; LÁZARO SERRANO-CID; ZULMARIE URRUTIA-VÉLEZ; OJEL RODRÍGUEZ-TORRES; PUERTO RICO EXAMINING BOARD OF ACCOUNTANTS; INSURANCE COMPANIES A, B, C, D, E, F, G AND H,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. Senior District Judge]

---

Before

Torruella, Leval,[*] and Lipez,
Circuit Judges.

---

Ricardo Guzmán-López de Victoria, with whom Ivy Mercado-Ramos and Guzmán & Mercado, P.S.C., were on brief for appellant.
Rosa Elena Pérez-Agosto, Assistant Solicitor General, with whom Irene S. Soroeta-Kodesh, Solicitor General, Leticia M. Casalduc-Rabell, Deputy Solicitor General, and Zaira Z. Girón-Anadón, Deputy Solicitor General, were on brief for appellees.

---

April 22, 2011

---

[*]  Of the Second Circuit, sitting by designation.

**TORRUELLA, Circuit Judge.** This case requires us to determine whether the deficient manner in which the members of the Puerto Rico Examining Board of Accountants (the "PREBA" or the "Board")[1] presided over the administrative hearings to suspend and revoke appellant's Certified Public Accountant ("CPA") license disqualifies them from the protections of quasi-judicial immunity. We affirm the district court's determination that it does not.

## I. Facts and Procedural History

When reviewing a district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we take the well-pleaded facts in the light most favorable to the plaintiff and draw all reasonable inferences in his favor. Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 594 (1st Cir. 2011).

Appellant, Miguel Guzmán-Rivera ("Guzmán"), received a license to practice as a CPA from the PREBA on February 12, 1998. P.R. Laws Ann. tit. 20, § 779. On June 5, 2006, the PREBA required appellant to submit to an involuntary practice review[2] and to provide a corresponding report (the "Practice Review Report") on or

---

[1] The PREBA was created pursuant to the Public Accountancy Act of 1945, Act No. 293 of May 15, 1945 and governs the CPA practice in Puerto Rico. P.R. Laws Ann. tit. 20, §§ 771-789. The Board consists of five members who are appointed by the Governor. Id. § 773.

[2] The practice review was to be conducted by a fellow CPA and concerned the appellant's previous twelve months of practice.

-2-

before August 31, 2006.  On June 19, 2006, Guzmán requested that the practice review be postponed until 2007 but the PREBA denied the request based on a "need and urgency" to conduct the review. At Guzmán's request, the PREBA scheduled a hearing for October 20, 2006, but due to his own scheduling error he failed to appear. Guzmán contacted the Board on October 23, 2006 to explain his absence and to request a rescheduling, but the Board did not respond to his request.

On November 17, 2006, the PREBA issued a resolution summarily suspending Guzmán's CPA license indefinitely.  Guzmán's suspension, which took place without the benefit of a hearing, was based on Guzmán's failure to comply with the PREBA's disciplinary requirement of submitting to a practice review.  Guzmán was notified of the suspension on November 27, 2006.  On November 29, 2006, Guzmán requested that the Board reconsider its decision because he had already begun the practice review process.  The Board scheduled a hearing for December 18, 2006 and sent Guzmán notice of the same.  The notice that Guzmán received did not comply with the requirements of Puerto Rico law; it did not contain information regarding the nature or purpose of the hearing, the legal provisions authorizing the hearing, Guzmán's alleged violations, his right to attend the hearing with counsel, or the consequences of his failure to appear.  See P.R. Laws Ann. tit. 3, § 2159.  During the December 18, 2006 hearing, the PREBA informed

-3-

Guzmán that the Puerto Rico Association of Certified Public Accountants ("PRACPA") had referred his case to the PREBA based on a 2005 audit. PREBA ordered the practice review process based on PRACPA's referral. The PREBA informed Guzmán that his CPA license would remain suspended until he presented his Practice Review Report. The deadline to submit the Practice Review Report was set for January 31, 2007. Guzmán completed the requested Practice Review Report on March 6, 2007.[3] The PRACPA approved the Practice Review Report on July 3, 2007 and Guzmán submitted it to the PREBA on July 13, 2007.

On August 17, 2007, the PREBA informed Guzmán that it would not lift the suspension on his license. The PREBA's reasons were as follows: (i) Guzmán bought certification stamps on the same day he had been suspended; (ii) the Practice Review Report was delivered after the January 31, 2007 deadline; and (iii) the practice review opinion was adverse on the merits. The PREBA notified Guzmán that it would hold another hearing on September 24, 2007. Again, the notice did not comply with local law requirements. See P.R. Laws Ann. tit. 3, § 2159.

At the September 24, 2007 hearing, the PREBA did not discuss the contents of the Practice Review Report. Instead, the

---

[3] Guzmán's Practice Review Report was delayed due to the difficulty he had in locating a reviewing CPA who would work during the 2006-2007 Christmas period. Guzmán informed the PREBA of these delays via e-mail.

Board questioned Guzmán regarding the delay in submitting his Practice Review Report and about the certification stamps he acquired on November 17, 2006.[4] The PREBA failed to inform Guzmán of his due process rights.

On October 24, 2007, the PREBA issued a resolution revoking Guzmán's CPA license, stating that Guzmán did not follow the standards of the profession and that he had a clear intention to violate the Public Accountancy Act and the profession's code of ethics. Guzmán was notified of the same on October 27, 2007. On October 29, 2007, Guzmán filed a request for reconsideration, which the PREBA denied on November 26, 2007, without explanation.

On December 26, 2007, Guzmán filed for judicial review before the Puerto Rico Court of Appeals alleging that the PREBA had violated his due process rights when suspending and revoking his CPA license. On June 16, 2008, the Puerto Rico Court of Appeals issued a judgment revoking the PREBA's ruling and ordering it to reinstate Guzmán's license "immediately and without any kind of delay." Guzmán Rivera v. Examining Bd. of Certified Pub. Accountants, No. KLRA2007-01378, 2008 WL 3211317, at *28[5] (P.R.

---

[4] Guzmán explained that at the time he bought the stamps he did not know that his license had been suspended, as he first received notice of the suspension on November 27, 2006.

[5] Where no official translation of a Puerto Rico court decision is available, all pinpoint citations used herein refer to the certified translation submitted by the appellant. See Appendix to Brief of Appellant, at 23-51, Guzmán-Rivera v. Lucena-Zabala, No. 09-2175 (1st Cir. argued Nov. 2, 2010).

Cir. June 16, 2008) (certified translation provided by the parties). The court held that "the Board erred in law, when suspending, as well as revoking [Guzmán's CPA license]. Certainly, the Board totally disregarded the procedures required to suspend and revoke a license." Id. at *22. Yet, the court held that the Board could "make the corresponding findings, if any, pursuant to the rulings of [the] judgment" and noted that the Board could carry out an administrative hearing if it deemed that such a hearing was necessary.[6] Id. at *28.

On August 13, 2008, Guzmán filed a complaint in the United States District Court for the District of Puerto Rico against the appellees,[7] suing the individual defendants in their official and individual capacities. Guzmán alleged a violation of section 1983 of the Civil Rights Act of 1964 due to defendants' violations of his Fourteenth Amendment due process rights. On November 10, 2008, appellees filed a motion to dismiss the case pursuant to, inter alia, Federal Rule of Civil Procedure 12(b)(6)

---

[6] The Puerto Rico Court of Appeals ordered Guzmán's license reinstated due to the Board's failure to provide Guzmán with due process. They did not, however, rule on the merits of whether Guzmán's license could be suspended based on the Practice Review Report. The PREBA could follow the proper procedures and suspend or revoke Guzmán's license in the future.

[7] Guzmán sued Kermit Lucena-Zabala, Zaida Camacho-Rossy, Anabelle Núñez-Ubarri, Lázaro Serrano-Cid, Zulmarie Urrutia-Vélez, Ojel Rodríguez-Torres, the PREBA and several insurance companies. Appellant named "Insurance Companies A, B, C, D, E, F and G" to designate insurance companies that are not yet identified but may have available coverage for the claims presented.

claiming that they were entitled to absolute immunity in their individual capacities because they were performing quasi-judicial duties.

The court granted defendants' motion to dismiss on the ground that they were entitled to absolute immunity in their individual capacities. Guzmán-Rivera v. Lucena-Zabala, No. 08-1897 (SEC), 2009 WL 1940477, at *7 (D.P.R. July 1, 2009). The court concluded that the appellees perform "traditional 'adjudicatory' function[s]," that the functions are comparable to those of a judge, and that procedural safeguards, including the right to appeal the Board's decision via judicial review in the Puerto Rico courts, protect the individual whose license is in dispute. Id. at *6-7 (citing Bettencourt v. Bd. of Registration in Med. of Mass., 904 F.2d 772, 783 (1st Cir. 1990)). The court found that "the allegedly deficient manner in which the members of the Board presided over [the] administrative hearings is irrelevant, insofar as the tasks they performed were in fact adjudicatory in nature, are functionally comparable to those of a judge, and thus entitle[] them to the absolute immunity that is vested upon judges." Id. at *7.

The court entered judgment on July 1, 2009. Appellant filed a motion for reconsideration on July 15, 2009 and appellees filed their response thereto on the same day. Plaintiff filed a timely notice of appeal on July 31, 2009. The district court

-7-

denied the motion for reconsideration on August 5, 2009. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II. Discussion

The district court granted appellees' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) based on its conclusion that the individual defendants were entitled to absolute immunity and that Guzmán's constitutional right to due process was adequately protected. Guzmán appeals such dismissal and contends that the defendants are not entitled to absolute immunity because they acted outside the scope of their duties by disregarding the procedural safeguards mandated by Puerto Rico law.

We review a district court's dismissal for failure to state a claim upon which relief can be granted de novo. Peñalbert-Rosa, 631 F.3d at 594; Coggeshall v. Mass. Bd. of Registration of Psychologists, 604 F.3d 658, 662 (1st Cir. 2010). We agree with the district court's assessment that the defendants are entitled to immunity in their individual capacities.

"[T]here are some officials whose special functions require a full exemption from liability." Butz v. Economou, 438 U.S. 478, 508 (1978). Judges are entitled to absolute immunity from lawsuits even where they are accused of deciding the case due to improper motives. Id. at 508-09. "If a civil action could be maintained against a judge by virtue of an allegation of malice, judges would lose 'that independence without which no judiciary can

-8-

either be respectable or useful.'" Id. at 509 (quoting Bradley v. Fisher, 80 U.S. 335, 347 (1872)). The Supreme Court has extended this immunity to federal agency officials performing adjudicatory duties. Id. at 514. We have found that this immunity may apply to licensing boards where the board members' roles are "functionally comparable" to those of judges. See Bettencourt, 904 F.2d at 783-84.

To determine whether the agency officials' roles are akin to those of a judge, we must first determine whether the PREBA members "perform a traditional 'adjudicatory' function, in that [they] decide[] facts, appl[y] law, and otherwise resolve[] disputes on the merits (free from direct political influence)[.]" Id. at 783. Next, we must determine whether the cases the PREBA members decide are "sufficiently controversial that, in the absence of absolute immunity, [they] would be subject to numerous damages actions[.]" Id. Finally, we must ask whether the PREBA members "adjudicate disputes against a backdrop of multiple safeguards designed to protect a[n] [accountant's] constitutional rights[.]" Id. We address only the first and third prongs of the analysis as Guzmán does not contest that the second prong was met. Guzmán-Rivera, 2009 WL 1940477, at *7.

First, we conclude that the PREBA members perform traditional adjudicatory functions. Members of the PREBA are statutorily authorized to issue licenses to practice and to revoke

-9-

or suspend them.  P.R. Laws Ann. tit. 20, §§ 779-780.  When revoking or suspending a CPA license, the PREBA is required to hold a hearing to determine if there is cause to revoke or suspend the license.  See id. § 780.  The Public Accountancy Act, id. § 782, permits the Board to institute proceedings against a certified public accountant and requires the Board to comply with the requirements of the Uniform Administrative Procedures Act[8] ("UAPA"), P.R. Laws Ann. tit. 3, §§ 2101-2201.  The UAPA allows each agency to designate "examining officials . . . to preside over the adjudicatory procedures that are held" and provides that "[t]hese officials or employees shall be designated by the title of administrative judges."  Id. § 2153.  Like judges, the PREBA members who preside over the adjudicatory procedures decide facts, apply laws, and otherwise resolve disputes on the merits.  Id. § 2164 ("The [final] order or resolution shall include and expound the findings of fact[,] . . . the conclusions of law that provide the grounds for the adjudication, and the availability of the recourse of reconsideration or review, as the case may be.").  Therefore, the first prong of the functional analysis is met.  See Bettencourt, 904 F.2d at 783.

We must now ask whether the PREBA members, like judges, "adjudicate disputes against a backdrop of multiple safeguards

---

[8]  In Spanish, this statute is known as "Ley de Procedimiento Administrativo" ("L.P.A.U.").

designed to protect a[n] [accountant's] constitutional rights[.]" Id. Guzmán argues that the district court erred in finding that this prong of the analysis was met. He argues that his constitutional right to due process was not adequately protected because, as the Puerto Rico Court of Appeals determined, the PREBA disregarded all procedural safeguards required under Puerto Rico law, Guzmán Rivera, No. KLRA2007-01378, at *22, and due to this unlawful deprivation he was stripped of his proprietary right to practice his profession for twenty months.

As our precedents indicate, the third prong of the functional analysis is meant to examine whether, generally, "enough safeguards exist to 'enhance the reliability of information and the impartiality of the decisionmaking process . . . .'" Bettencourt, 904 F.3d at 783 (quoting Butz, 438 U.S. at 512) (examining whether Massachusetts' medical licensing proceedings generally provide sufficient safeguards against malicious action by members of the medical licensing board). "The UAPA provides procedural safeguards for actions undertaken by Puerto Rico's administrative agencies . . . ." Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 31 (1st Cir. 2008) (citing P.R. Laws Ann. tit. 3, § 2151). The UAPA mandates that, in every formal adjudicatory proceeding, an agency safeguard "(A) [t]he right to timely notice of the charges or complaints or claims against one of the parties[;] (B) [t]he right to introduce evidence[;] (C) [t]he right to an impartial adjudication[; and] (D)

-11-

[t]he right to have the decision based on the record of the case." P.R. Laws Ann. tit. 3, § 2151. The UAPA allows for the PREBA and the accountant to litigate against a backdrop of procedures that provide for an adversarial process which includes the use of complaints, the opportunity to intervene, pre-hearing conferences, and discovery. Id. §§ 2154-2158. The accused accountant has the right to be represented by counsel, present witnesses, cross-examine witnesses, examine evidence, and request the issuance of subpoenas. P.R. Laws Ann. tit. 20, § 782(d). The PREBA is also represented by an attorney. Id. § 782(h). These safeguards ensure that there is impartial adjudication. In addition to explicitly guaranteeing the right to impartial adjudication, the UAPA allows a party who is adversely affected by an agency resolution to file a motion for reconsideration. P.R. Laws Ann. tit. 3, § 2165. Further, the adversely affected party may file a petition for review before the Puerto Rico Court of Appeals, id. § 2171-2172, or before the Court of First Instance, P.R. Laws Ann. tit. 20, § 782(j).

The procedures available to an accountant under the UAPA are similar to those that were available to the physician in Bettencourt. See 904 F.2d at 783-84 (noting that in Massachusetts medical licensure proceedings, the physician may be represented by counsel, there is a Board prosecutor, there is a transcribed record, there is an opportunity to present evidence and for cross-

-12-

examination, there is a written opinion, and there is an opportunity to appeal to the Supreme Judicial Court of Massachusetts). In Bettencourt, we found the procedures available sufficiently ensured the impartiality of the decisionmaking process and provided protection against the Board of Registration in Medicine's malicious actions. Id. We find that the procedures available to an accountant before the PREBA are very similar to those that were available to physician in Bettencourt, are a sufficient safeguard against the PREBA's wrongful actions, and justify granting absolute immunity to the PREBA members. See Diva's Inc. v. City of Bangor, 411 F.3d 30, 41 (1st Cir. 2005) (concluding that the right to request an explanation for the denial of the permit and the right to appeal the decision to the Bangor Board of Appeals were sufficient procedural safeguards to protect the permit applicant from a violation of its constitutional rights).

The issue Guzmán raises is whether the deficient manner in which the members of the PREBA presided over the administrative hearings disqualifies them from the protections of immunity. Guzmán alleges that, due to their undisputed disregard for the procedural safeguards required under Puerto Rico law, Guzmán-Rivera, No. KLRA2007-01378, at *22, the defendants acted outside the scope of their duties and are therefore not entitled to

-13-

absolute immunity.[9]  Ricci v. Key Bancshares of Me., Inc., 768 F.2d 456, 462 (1st Cir. 1985).  But as Ricci states, "[t]he requirement that conduct protected by absolute immunity falls 'within the outer perimeter of [the official's] . . . line of duty' is read fairly expansively."  Id. (alterations in original).  The Supreme Court has stated that "the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him."  Stump v. Sparkman, 435 U.S. 349, 356 (1978).  The Court further instructed that we construe the scope of the judge's

---

[9]  Guzmán also argues that the Ninth Circuit's decision in Chalkboard, Inc. v. Brandt, 902 F.2d 1375 (9th Cir. 1989), supports his contention that appellees lacked jurisdiction to summarily suspend his CPA license and that they are therefore not entitled to quasi-judicial immunity.  In Chalkboard, Inc., the Ninth Circuit noted that in order for an agency's action to be considered judicial or prosecutorial, the function must have been assigned to the agency by state law.  Id. at 1378.  The Ninth Circuit denied immunity to agency officials who summarily closed a day care center because it concluded that the agency was not authorized by any Arizona statute to effect a summary-closure.  Id. at 1379-80.  Although the Arizona Administrative Procedure Act, a general purpose statute, had previously granted the agency the power to effect a summary-closure in the event of an emergency, a subsequent statute specifically addressing the closure of day care centers conferred the authority for summary-closure to the county attorney or attorney general and the courts.  Id. at 1378-79.

This appeal does not present facts similar to those at issue in Chalkboard, Inc.  In the present appeal, assuming that this had been an emergency situation warranting summary suspension of Guzmán's CPA license, the PREBA would have been authorized under Puerto Rico law to effect such a summary suspension.  See P.R. Laws Ann. tit. 3, § 2167; San Gerónimo Caribe Project, Inc. v. Regulations and Permits Admin., 2008 TSPR 130, 2008 PR Sup. LEXIS 135, at *23-26 (P.R. July 31, 2008) (certified translation on file with the First Circuit).

jurisdiction broadly.  Id.  "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."  Id. at 359; see also Decker v. Hillsborough Cnty. Attorney's Office, 845 F.2d 17, 21 (1st Cir. 1988).  Here, the PREBA's summary suspension of Guzmán's license was a grave and unacceptable procedural error.  Guzmán Rivera, No. KLRA2007-01378, at *22.  Nevertheless, the PREBA had jurisdiction to revoke or suspend Guzmán's license and the members of the PREBA are therefore entitled to immunity.  See Stump, 435 U.S. at 359.

## III.  Conclusion

We affirm the district court's grant of appellees' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

**Affirmed**.