# United States Court of Appeals
# For the First Circuit

No. 13-1587

KATHY RODRÍGUEZ-VIVES,

Plaintiff, Appellant,

v.

PUERTO RICO FIREFIGHTERS CORPS OF
THE COMMONWEALTH OF PUERTO RICO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Baldock,* and Kayatta, Circuit Judges.

Enrique J. Mendoza Méndez, with whom Juan R. Dávila Díaz
and Mendoza Law Offices were on brief, for appellant.
Michelle Camacho-Nieves, Assistant Solicitor General of
Puerto Rico, with whom Margarita Mercado-Echegaray, Solicitor
General, was on brief, for appellee.

February 18, 2014

---

*Of the Tenth Circuit, sitting by designation.

**KAYATTA, Circuit Judge**.  Plaintiff Kathy[1] Rodríguez-Vives sued the Commonwealth of Puerto Rico in 2005, claiming that defendant Puerto Rico Firefighters Corps of the Commonwealth of Puerto Rico ("the Corps") refused to hire her as a firefighter because of her gender.  As part of a 2009 settlement of that suit, the Corps agreed to employ her as a "transitory" firefighter until the next training academy was held, to admit her to the academy, and to hire her as a firefighter if she graduated.  She thereafter again sued the Corps, alleging that, during her transitory employment, the Corps subjected her to various forms of abuse in retaliation for her earlier suit.  This alleged post-settlement mistreatment, she argued, constituted both sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3.  The district court granted the Corps's motion to dismiss her new complaint for failure to state a claim.  Rodríguez-Vives appeals only the dismissal of her claim of unlawful retaliation.  We hold that her complaint states a plausible claim of unlawful retaliation under Title VII, and we therefore vacate the district court's order.

---

[1]  At times Rodríguez-Vives has also spelled her first name "Katty" and that is how her name was spelled on the docket in earlier litigation discussed later in this opinion.  We refer to her as "Kathy" in this opinion because that is how her name was spelled on the district court docket in this case and how she has referred to herself in this appeal.

## I. Background

Finding this to be a case amenable to disposition under Federal Rule of Civil Procedure 12(b)(6), the district court dismissed Rodríguez-Vives's complaint before the parties could engage in the discovery necessary to provide a fuller picture of what actually occurred. We therefore take as true the factual allegations in Rodríguez-Vives's complaint, drawing all reasonable inferences in her favor. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).

Rodríguez-Vives applied unsuccessfully to be a firefighter in the Corps in 2001. In 2005 she sued the Corps, alleging that the Corps's failure to hire her was discriminatory. Her complaint asserted a claim under 42 U.S.C. § 1983 for denial of her right to equal protection under the Fourteenth Amendment of the United States Constitution, and a claim under state law. Specifically, she alleged that, after meeting the minimum requirements to apply for a position with the Corps, she passed a physical agility test and was selected for several in-person interviews. Despite being placed on an eligibility list for admission to the next training session for new firefighters, known as a firefighter academy, she was not admitted.

On February 5, 2009, Rodríguez-Vives and the Corps signed a settlement agreement resolving that first suit. The Corps agreed to employ her as a "transitory" firefighter until the next training

academy was held, at which point it promised that she would be admitted, trained, and, if she completed the academy successfully, hired to a career position as a firefighter. In return she waived all claims that she could have brought against the Corps.

Rodríguez-Vives began working for the Corps on March 2, 2009. After being ordered to work at several different stations by various supervisors, she was assigned permanently to a fire station in Coamo where she claims she was subjected to a series of abuses that gave rise to this lawsuit. Her supervisor, a sergeant, "constantly said in front of [her] that he did not know why he had to end up stuck with her in his [s]tation" and "commented on various [occasions] that [she] was incompetent, dumb, inept, [and] that she did things backward." On one occasion when Rodríguez-Vives was cooking at the station the sergeant threw the pans she was using in the trash. On August 18, 2009, the sergeant threatened Rodríguez-Vives with disciplinary action for making an entry in the station's journal despite the fact that she had followed the instructions she had received for making entries in the journal. On August 27, he shouted at her about her entries in the journal and also threw it at her. After Rodríguez-Vives complained about this conduct her captain held a meeting with the sergeant, but the sergeant continued to engage in the same objectionable conduct after the meeting. Soon thereafter, the

Sergeant saw her in the parking lot of the Coamo station and accelerated his car, showering her with dust.

During Rodríguez-Vives's time at the Coamo fire station the only duties given to her were cooking, cleaning, and keeping the station's journal. These tasks were "supposed to be equally shared among all firefighters" but in the Coamo station they were not. Rodríguez-Vives was not issued uniforms or emergency kits as other firefighters were. She did not receive training given to other firefighters who, like her, had not attended a training academy. She was also not allowed in fire vehicles to get lunch. Finally, a male volunteer firefighter, who had not attended the academy, was allowed to "go out to deal with incidents" while Rodríguez-Vives was not. As a result of these actions Rodríguez-Vives suffered "severe psychological damages" that required treatment.

On December 22, 2009, Rodríguez-Vives filed a complaint with the Equal Employment Opportunity Commission alleging under Title VII that she had been discriminated against on account of her sex and retaliated against for her earlier lawsuit. She received a right to sue letter on May 11, 2011, and filed a complaint on August 2, 2011. She later filed an amended complaint containing the allegations described above. The Corps then moved to dismiss her complaint for failure to state a claim. The district court granted the motion on March 31, 2013. Rodríguez-Vives timely

appealed, challenging only the dismissal of the retaliation portion of her complaint.

## II. Analysis

The district court dismissed Rodríguez-Vives's complaint for failure to state a claim of retaliation under Title VII, holding that she had not sufficiently alleged that she had previously opposed a practice made unlawful by Title VII or that she suffered an adverse employment action. We conclude that the district court was wrong on both points. Before addressing either point, however, we first address the Corps's argument that we need not consider the sufficiency of Rodríguez-Vives's complaint because the 2009 settlement bars her from bringing this claim.

### A. Effect of the 2009 Settlement

The Corps argues that Rodríguez-Vives is really complaining that the Corps has, in effect, failed to perform its obligations under the settlement agreement. Pointing to the district court's retention of jurisdiction to enforce the settlement, Amended Judgement of February 24, 2009, Rodríguez-Vives v. Commonwealth of Puerto Rico, Case No. 3:05-cv-02136-DRD, Dkt. No. 74, the Corps maintains that Rodríguez-Vives's only remedy was to file a motion to enforce the settlement in that previously closed action. Failing to do so, the Corps argues, somehow gives rise to a res judicata bar to this action.

As the district court correctly recognized, the 2009 settlement agreement bars Rodríguez-Vives from bringing now a related claim that could have been brought prior to the date of the settlement, or arising out of events occurring prior to that date. Rodríguez-Vives, though, rests this action on the Corps's conduct after the date of the settlement. Thus the settlement agreement provides no bar to this retaliation claim, nor could it. See Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson, 545 U.S. 409, 419 (2005) (noting in the statute of limitations context that a cause of action for retaliation generally accrues "when the retaliatory action occurs"); Alexander v. Gardner-Denver Co., 415 U.S. 36, 51-52 (1974) (holding in the arbitration context that an employee may retrospectively waive Title VII claims as part of a settlement but that "an employee's rights under Title VII may not be waived prospectively"); 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 265 (2009) (noting that Gardner-Denver was "correct in concluding that federal antidiscrimination rights may not be prospectively waived" but holding that agreement to arbitrate a Title VII claim was not a waiver).

Nor can we see any reason why Rodríguez-Vives, in seeking a remedy for the alleged post-settlement acts, was limited to enforcement of the settlement agreement. Suppose the Corps had intentionally run over Rodríguez-Vives with a truck to prevent her from being able to perform her new position. No reasonable person

-7-

would argue that her remedies would be limited to filing a motion to enforce the settlement agreement. Like an action for assault and battery, a retaliation claim is a "separate and independent cause of action" that stands or falls on its own. Jones v. Walgreen Co., 679 F.3d 9, 20 (1st Cir. 2012) (internal quotation marks omitted). Moreover, interpreting the settlement agreement as limiting Rodríguez-Vives's rights to bringing an enforcement action rather than asserting her statutory right to protection from post-settlement retaliation would constitute a form of pre-retaliation waiver, which is prohibited under Title VII. See Gardner-Denver, 415 U.S. at 51-52; 14 Penn Plaza LLC, 556 U.S. at 265.

This is not to say that the settlement agreement is irrelevant to this suit. If facts not apparent on the face of the settlement agreement show that the settlement agreement is properly interpreted to place on Rodríguez-Vives's post-settlement duties as a transitory firefighter the restrictions about which she complains in her complaint, such a showing would likely be material to determining whether the restrictions were retaliatory. The possibility of such a defense, though, is inadequate to allow a defendant to prevail on a motion to dismiss when the plaintiff alleges a materially different version of the facts. Nor does the interpretation and implementation of the settlement agreement have any role in parrying the other allegations of retaliatory harassment made by Rodríguez-Vives, such as her claims that the

-8-

sergeant threw the station's journal at her and that he verbally harassed her.

For all these reasons, we can find no basis in the settlement agreement for insulating the Corps from the possibility of Title VII liability for the alleged acts of unlawful retaliation committed after the agreement was signed on February 5, 2009.

### B. Sufficiency of Rodríguez-Vives's Complaint

To bring a successful retaliation claim under Title VII "a plaintiff must first prove . . . [o]ne, she undertook protected conduct[,] . . . [t]wo, her employer took a material adverse action against her[,] . . . [a]nd . . . three, a causal nexus exists between elements one and two." Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139 (1st Cir. 2013) (citations omitted). The district court held that Rodríguez-Vives's claim failed to allege the first two elements sufficiently to entitle her to relief.

We review de novo the dismissal of a case under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012). A complaint need not allege every fact necessary to win at trial, but need only include sufficient facts to make it "'plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint "must contain more than a rote recital of the elements of a cause of action," but need not include "detailed factual allegations."

-9-

Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013). We have also recently cautioned that some courts apply the plausibility standard "too mechanically" and fail to read complaints "as a whole." García-Catalán v. United States, 734 F.3d 100, 101, 103 (1st Cir. 2013).

### 1. Plaintiff Adequately Alleges that She Opposed a Practice Made Unlawful by Title VII.

Rodríguez-Vives's 2005 lawsuit did not allege a violation of Title VII. Instead, suing under 42 U.S.C. § 1983, she alleged that the Corps's refusal to hire her due to her sex violated the Equal Protection Clause of the United States Constitution. The district court ruled, in effect, that the Corps could therefore retaliate against Rodríguez-Vives for having brought the earlier suit without violating the anti-retaliation provision of Title VII. We cannot accept this conclusion.

While Title VII's anti-retaliation provision certainly protects employees from retaliation for filing a Title VII suit, it casts its protective cloak much more broadly. Specifically, it also makes it "unlawful . . . for an employer to discriminate against [an employee] . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII] . . . ." 42 U.S.C. § 2000e-3(a); see also Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 269 (2001) (per curiam). In Title VII, "'oppose,' being left undefined by the statute, carries its ordinary meaning: to resist or antagonize . . . ; to contend

-10-

against; to confront; resist; withstand." Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 555 U.S. 271, 276 (2009) (alterations in original) (citations and some internal quotation marks omitted). It is well-established, for example, that it is unlawful under Title VII to retaliate against employees for actions falling far short of filing Title VII claims. Indeed, the paradigmatic act of retaliation is firing an employee for complaining to a superior about conduct that constitutes sex discrimination. See, e.g., Tuli v. Brigham & Women's Hosp., 656 F.3d 33, 41-46 (1st Cir. 2011). Even employees who complain of discrimination to their employers' customers are protected from retaliation. See EEOC v. Crown Zellerbach Corp., 720 F.2d 1008, 1012-13 (9th Cir. 1983).

Rodríguez-Vives's opposition here was more, not less, substantial than the opposition of the plaintiffs in Tuli and Crown Zellerbach. Though we are aware of no case directly on point, nothing in the language of the statute or common sense suggests that she was nevertheless required to mention Title VII in order to be protected from opposing the practices that Title VII renders unlawful.

The Corps concedes that the 2005 suit "alleged discriminatory hiring practices and procedures on the basis of gender." Title VII makes it unlawful "for an employer . . . to fail or refuse to hire . . . any individual . . . because of such

-11-

individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). The conduct Rodríguez-Vives opposed was therefore precisely the kind of discrimination Title VII was intended to combat. The opposition for which she alleges she was punished therefore fell well within the scope of the conduct that Congress sought to protect from retaliation, whether or not she referred to Title VII (or exhausted her Title VII remedies) in voicing that opposition.[2]

### 2. Plaintiff Adequately Alleges Employment Actions Sufficiently Adverse to Constitute Retaliation.

The district court also found that the actions Rodríguez-Vives alleged the Corps directed at her could not plausibly be seen as materially adverse. Again, we disagree. In a retaliation case, a plaintiff need only "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[3]  Burlington

---

[2] Nor is it necessary for Rodríguez-Vives to establish that the allegations in her 2005 suit were correct. See Fine v. Ryan Int'l Airlines, 305 F.3d 746, 752 (7th Cir. 2002) (an employee may bring a retaliation claim where the complaint for which she was retaliated against was not "completely groundless" (internal quotation marks omitted)); Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996) (employee must have "good faith, reasonable belief" that action she opposed violates Title VII (internal quotation marks omitted)).

[3] While the district court's opinion could be read to suggest that the retaliatory actions needed to be related to Rodríguez-Vives's gender, see Rodríguez-Vives v. P. R. Firefighters Corps of P. R., 935 F. Supp. 2d 409, 421 (D.P.R. 2013), Burlington Northern makes clear there is no such requirement. Burlington Northern, 548 U.S. at 68.

<u>Northern & Santa Fe Ry. Co.</u> v. <u>White</u>, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). Rodríguez-Vives's allegations about her superiors' conduct are sufficient to state a claim consistent with this standard of material adversity. A reasonable person might well decide that it is not worth suing to obtain such employment if she knew that, once she obtained it, she would be subjected to the actions alleged in the complaint.

The actions about which Rodríguez-Vives complains fall into two categories. First, she alleges that the Corps denied her opportunities to accompany firefighters on calls even though the Corps allowed a male volunteer firefighter to go on such calls. Second, she alleges that the Corps subjected her to repeated unpleasant and inequitable treatment.

As to the first category, the district court concluded that the disparate treatment of Rodríguez-Vives and the male volunteer was not improper because, while neither Rodríguez-Vives nor the male volunteer had attended the training academy, Puerto Rico law both prohibited a "transitory" firefighter like Rodríguez-Vives from going on such calls and allowed volunteers to do so. The only basis the district court articulated for that conclusion, however, was a statute that creates a volunteer firefighter program and provides for various details of its operation. <u>See</u> P.R. Laws. Ann. tit. 25, § 331z. Nothing in the statute addresses whether "transitory" firefighters like Rodríguez-Vives may fight fires. On

appeal, the Corps itself also cites no authority at all to support the claim that Puerto Rico law imposed on Rodríguez-Vives the restrictions that were not applied to the volunteer firefighter. We are therefore given no basis to find it implausible that harsher restrictions were applied to Rodríguez-Vives as retaliation for her having claimed to be a victim of sex discrimination.

As for the second category of actions Rodríguez-Vives cites as examples of retaliation, many may well be the types of "'petty slights or minor annoyances that often take place at work,'" Billings v. Town of Grafton, 515 F.3d 39, 54 (1st Cir. 2008) (quoting Burlington Northern, 548 U.S. at 68), and thus "fall outside the scope of the anti-discrimination laws." Id. Nevertheless, cumulatively these allegations plausibly paint a picture that would allow a factfinder to find the Corps's conduct sufficient to deter a reasonable person from challenging the Corps's discriminatory hiring practices had she known she would be subjected to these abuses if successful. See Burlington Northern, 548 U.S. at 68.

In this regard, we note that several of the specific acts alleged by Rodríguez-Vives by themselves go quite a ways toward making out a claim. For example, the alleged refusal of Rodríguez-Vives's superiors to allow her, like others, to travel on fire vehicles to get lunch might be an adverse employment action on its own. Cf. Burlington Northern, 548 U.S. at 69 ("[E]xcluding an

employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination."). Similarly, Rodríguez-Vives's allegation that she was assigned to cook and clean rather than to perform the same jobs as others in the station, depending on the surrounding facts, might make plausible a finding that there was an adverse employment action. Compare Morales-Vallellanes v. Potter, 605 F.3d 27, 38 (1st Cir. 2010) (holding on summary judgment that reassignment to duties which were not "more difficult, less prestigious, or objectively inferior" was not an adverse employment action) with Tart v. Illinois Power Co., 366 F.3d 461, 473 (7th Cir. 2004) (jury could have found adverse employment action where plaintiffs were reassigned to "jobs . . . [that] involved far less skill and significantly harsher working conditions than the plaintiffs' prior positions"). Given the cumulative weight of Rodríguez-Vives's allegations, however, we need not decide whether each of these individual allegations would, standing alone, be sufficient to state a plausible claim of retaliation under Title VII.

We emphasize that this case is on appeal of a 12(b)(6) motion, not a motion for summary judgment. "Although a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial . . . she need not plead facts sufficient to establish a prima facie

-15-

case." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013). The Corps plausibly suggests innocent explanations for much of the conduct about which Rodríguez-Vives complains, but it is not for the district court or us to weigh now the merits of these explanations against the merits of the explanations alleged by Rodríguez-Vives. Rather, Rodríguez-Vives may proceed to discovery because she has alleged sufficient facts to make the non-innocent explanation of these facts plausible. See Sepúlveda-Villarini v. Dep't of Educ. of P. R., 628 F.3d 25, 30 (1st Cir. 2010) ("A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss."). Similarly, the Corps's apparently uncontested assertion that it hired Rodríguez-Vives as a firefighter after she filed this lawsuit does not require us to reject her description of events occurring prior to that hiring.

Nor, contrary to the district court's suggestion, Rodríguez-Vives 935 F. Supp. 2d at 414-15, was Rodríguez-Vives required to provide the exact details of each incident, such as the dates or the precise context of the abusive comments, to make her claim plausible. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 10 (1st Cir. 2011) ("[A] court may not insist on the allegation of specific facts that would be necessary to prove the claim at trial." (internal quotation marks omitted)). Because it felt that Rodríguez-Vives's allegations lacked detail the district court

-16-

disregarded them as conclusory. A conclusory allegation, however, is one which simply asserts a legal conclusion such as "I was retaliated against" not a specific factual allegation, such as "my supervisor threw a book at me," that merely lacks some surrounding context. See Ocasio-Hernández, 640 F.3d at 13-14. We have held that some factual allegations may be so "threadbare" that they are in essence conclusory even if they include more than an assertion that an element of a cause of action was satisfied. See Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595-96 (1st Cir. 2011). But this is only the case where the bareness of the factual allegations makes clear that the plaintiff is merely speculating about the fact alleged and therefore has not shown that it is plausible that the allegation is true. Id. Here, in contrast, Rodríguez-Vives's complaint described actions of which she had personal knowledge in sufficient detail to make them plausible.


## III. Conclusion

For the foregoing reasons we vacate the district court's order dismissing Rodríguez-Vives's complaint and we remand this case to the district court for further proceedings consistent with this opinion. We award no costs.

So ordered.