# United States Court of Appeals
# For the First Circuit

No. 13-2008

MURIELLE ABDALLAH,
Plaintiff, Appellant,

v.

BAIN CAPITAL LLC,
Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Thompson, Circuit Judge,
Souter, Associate Justice,[*]
Kayatta, Circuit Judge.

Phillippe Jean Joseph Pradal and Timothy K. Cutler, with
whom Pradal & Associates, PLLC and Cutler & Wilensky LLP were on
brief, for appellant.
David Casey, with whom Christopher B. Kaczmarek and
Littler Mendelson, P.C. were on brief, for appellee.

June 3, 2014

---

[*]    Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**KAYATTA, Circuit Judge**.  Plaintiff Murielle Abdallah and the members of the class that she seeks to represent worked in a luggage factory in Hénin-Beaumont, France.  The factory was owned by Samsonite, which was in turn controlled by an investment group led by Bain Capital, LLC.  In 2005, Samsonite sold the factory to a thinly-capitalized third party, HB Group.  In early 2007, a French court ordered the liquidation of the factory, costing Abdallah and her coworkers their jobs.  HB Group had no resources with which to pay Abdallah and her coworkers the post-termination benefits to which they were entitled under French law.  In 2012, Abdallah commenced this putative class action, seeking to hold Bain liable, under theories of tortious interference with employment arrangements, fraud, negligent misrepresentation, and unjust enrichment, for losses suffered by the factory's workers as a result of the sale and liquidation, which Abdallah claims Bain orchestrated.  Pointing to the passage of over five years between the liquidation of the factory and the commencement of this action, and rejecting Abdallah's arguments for tolling the running of the applicable three-year limitations period, the district court dismissed the complaint.  For the  following reasons, we affirm.

## I.  Background

This case was dismissed under Federal Rule of Civil Procedure 12(b)(6), before the parties could engage in the fact-finding necessary to determine which side's versions of events is

true.  In describing the events giving rise to this case, we therefore look to the allegations of the complaint, see Rodríguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 280 (1st Cir. 2014), as well as statements Abdallah admittedly made in French proceedings as reflected in records from those proceedings, the authenticity of which no party contests, see In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003) (stating that a court may consider "matters of public record" when dismissing a complaint on the basis of an affirmative defense); Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000) (noting in dicta that "a court ordinarily may treat documents from prior state court adjudications as public records").  In reviewing all of these materials, we draw all reasonable inferences in Abdallah's favor.  See Rodríguez-Vives, 743 F.3d at 280.

In 2003 a group of investors led by Bain purchased for $106,000,000 approximately 85 percent of Samsonite, which owned the factory at issue in this case and employed more than 200 workers there.  Bain was then faced with a problem.  It wanted to shut down the factory, but, under French law, doing so would have required Samsonite to pay between $75,000,000 and $120,000,000 to fund a "collective redundancy plan" for the laid-off employees.  Bain and Samsonite avoided either making a massive severance payment or retaining an unprofitable factory by hiring a third party to buy the factory.  To accomplish this, Samsonite formed a wholly owned

-3-

subsidiary, which Abdallah refers to as NewCo, and transferred the factory to it.  Samsonite then sold NewCo to HB Group for one euro. HB Group, in turn, was controlled by Jean-Jacques Aurel, an entrepreneur who had been involved in a similar transaction involving Samsonite's competitor, Delsey.  Samsonite also paid approximately €9,000,000 to HB Group, €1,000,000 of which was spent on a "shareholder advance."  Though HB Group told the factory employees that the factory would be converted to the production of solar panels, no solar panels were ever produced.  NewCo filed for bankruptcy less than a year later.

On February 15, 2007, after NewCo's bankruptcy, a French court ordered the "judicial liquidation" of the factory.  It appears that this is the date on which the employment of Abdallah and her coworkers formally terminated.  With neither NewCo nor HB Group able to provide the post-termination benefits required under French law, Abdallah and her coworkers filed suit against Samsonite and its shareholders, including Bain, in French civil court.  In the summer of 2007, meanwhile, Bain and the other investors sold their interest in Samsonite to CVC Capital Partners for $1,700,000,000.

In the French civil court proceeding, the plaintiffs eventually secured a ruling canceling the sale of NewCo by Samsonite to HB Group. During that litigation, Bain asserted that it was "a stranger to the contracts and all the acts that pertained

to the litigation."  Based on this assertion, the French court ultimately declared Bain "exterior to the annulment procedure." After the civil court cancelled the sale of NewCo, the plaintiffs obtained a ruling from a French labor court that Samsonite had never stopped being their employer.  The labor court found, however, that it had no jurisdiction over Bain because of the civil court's findings.

Meanwhile, Aurel, HB Group's principal, was criminally prosecuted for fraud in France and sentenced to three years in prison.  In 2011, he provided an affidavit to Abdallah asserting that a representative of Bain was present at Aurel's meetings with Samsonite in which the scheme for the transfer of the factory was hatched.  Moreover, Aurel revealed, Samsonite's representative repeatedly sought the assent of Bain's representative to the key elements of the scheme.  Abdallah claims that this 2011 affidavit revealed to her for the first time that Bain directed the transfer of the factory.

Unsatisfied with the remedies she had obtained in French court against Samsonite, Abdallah then sued Bain in the United States District Court for the District of Massachusetts in November 2011, alleging fraud, unjust enrichment, tortious interference with employment agreements, and unfair business practices in violation of Mass. Gen. Laws Ch. 93A § 2(a).  Bain moved to dismiss Abdallah's complaint, arguing that Abdallah's causes of action

accrued when her employment formally terminated on February 15, 2007, and that her complaint was therefore barred by the applicable statutes of limitation.  Abdallah countered that, under various tolling doctrines, the statutes of limitation on her causes of action did not begin to run until 2011, when she learned from Aurel the details of Bain's involvement in the factory's sale.

The district court (Tauro, J.) sided with Bain and dismissed Abdallah's complaint without prejudice, making clear that "[i]f additional facts regarding the information that came to light in September 2011 would justify invoking [tolling doctrines], Abdallah may refile a complaint . . . ."  See Abdallah v. Bain Capital LLC, 880 F. Supp. 2d 190, 199 (D. Mass. 2012).  In October 2012, Abdallah filed a new complaint with additional details, including some of the facts recounted in this opinion, about what and when she knew of Bain's involvement in the sale of the factory. The new complaint alleged tortious interference, fraud, negligent misrepresentation and unjust enrichment.  Because Abdallah filed a new complaint rather than amending her previous one and, in violation of Mass. Dist. Ct. Local Rule 40.1(G), failed to identify the new case as related to the previous one, the clerk randomly assigned the new case to Judge Woodlock rather than Judge Tauro. See Abdallah v. Bain Capital LLC, No. 12-12027-DPW, 2013 WL 3491074, *1 & n.1 (D. Mass. July 9, 2013).  After concluding that the new facts alleged in the new complaint did not alter Judge Tauro's conclusion, Judge Woodlock dismissed the case as barred by

-6-

the three-year statute of limitations. Id. at *5. This appeal of Judge Woodlock's judgment dismissing the case with prejudice followed.

## II.  Standard of Review

When the allegations in a complaint show that the passage of time between the events giving rise to the claim and the commencement of the action exceeds the applicable limitations period, a district court should grant a 12(b)(6) motion by the defense if the complaint (and any other properly considered documents) "fails to 'sketch a factual predicate' that would" provide a basis for tolling the statute of limitations. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509-10 (1st Cir. 1998)).

In making such an assessment under Rule 12(b)(6), a district court engages in no fact finding. Rather, it presumes that the facts are as properly alleged by plaintiffs and/or reflected in other properly considered records, with reasonable inferences drawn in plaintiffs' favor. See, e.g., Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). Our review of the district court's reading of the complaint and associated records is de novo. Id. Similarly, to the extent that the district court needed to consider issues of law (for example, whether the complaint adequately alleges facts that would plausibly

make out a claim for fraudulent concealment), our review of such questions of law is also de novo. See, e.g., Simmons v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009). Finally, our review of the district court's judgment that the facts and law as so determined did not warrant equitable relief is for abuse of discretion. Rivera-Díaz v. Humana Ins. of Puerto Rico, Inc., No. 13-1475, 2014 WL 1395064, at *3 (1st Cir. Apr. 11, 2014).

## III. Analysis

Abdallah does not dispute that, absent tolling, her claim accrued on February 15, 2007, the date that the French court ordered the judicial liquidation of the factory and Abdallah's job loss became certain. She also does not dispute that her causes of action are subject to a three-year statute of limitations under Massachusetts law. See Mass. Gen. Laws ch. 260, § 2A. Accordingly, this suit against Bain, which was commenced on October 30, 2012,[1] must be dismissed as time barred unless there is a basis to conclude that the statute of limitations was tolled. Abdallah attempts to establish that tolling is appropriate using two doctrines: fraudulent concealment and equitable tolling.

In Massachusetts, a statute of limitations can be tolled because of fraudulent concealment if "'the wrongdoer . . . concealed the existence of a cause of action through some

---

[1] Abdallah did not appeal the dismissal of her first action filed in November of 2011.

affirmative act done with intent to deceive,'" but "'[t]he statute of limitations . . . is not tolled if the plaintiff has actual knowledge of the facts giving rise to his cause of action.'" Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 239 (1st Cir. 2005) (quoting Stark v. Advanced Magnetics, Inc., 50 Mass. App. Ct. 226, 233-34 (2000)); see also Mass. Gen. Laws ch. 260, § 12. The doctrine of equitable tolling also provides no relief to a plaintiff who knows of facts sufficient to bring the cause of action. Indeed, equitable tolling only applies "if a plaintiff exercising reasonable diligence could not have discovered information essential to the suit." Bernier v. Upjohn Co., 144 F.3d 178, 180 (1st Cir. 1998) (citing Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 631 (1997)).

To assess whether Abdallah knew so little before November 2009, so as to justify the tolling of the statutory limitations period under either theory, we begin with the nature of the claims she now seeks to press against Bain. All of her counts seek, in substance and form, to hold Bain liable for the allegedly fraudulent creation and sale of NewCo by Samsonite during the period the Bain-led investor group owned a controlling stake in Samsonite. She does not sue Bain for anything it did to her directly. Rather, she seeks to hold Bain liable for Samsonite's actions by alleging that Bain "not only interfered in the decision

making of Samsonite but dictated Samsonite's actions when [it was] negotiating with HB Group."

Abdallah knew well prior to 2009 precisely what Samsonite had done, even to the point of securing rulings against Samsonite in French courts in 2008. So the only remaining question is what to make of Abdallah's claim that she did not know until after November of 2009 that, as she now says she knows, Bain "dictated Samsonite's actions." The answer to this question seems clear. It took no imagination--or implausible allegation--to suggest that Samsonite's owners must have authorized such a major and highly visible financial transaction by the company they had just acquired. In any event, Abdallah actually sued Bain in French civil court at the time, explaining that she had "documents . . . show[ing] that the shareholders of S[amsonite], especially through the active brokerage of B[ain] . . . intervened directly in the organization of the disputed operation." Similarly, she argued to the French labor court in 2008 that "driven by its main shareholders" (which she does not deny she knew included Bain) "S[amsonite] . . . clearly abused its right to sell the factory, and committed fraud." She explicitly alleged that Bain had actually suggested to Samsonite the consultants and lawyers who put together the fraudulent sale, based on prior similar work they had done for another company.

Abdallah's first response to the foregoing recitation of her knowledge in 2007 is procedural.  For the first time on appeal, she argues that the district court wrongly considered only the portion of the French trial record that Bain provided with its brief and not other portions of the record in French court.  Abdallah does not explain, however, why reviewing any of these other documents would have shown that she did not know what the excerpts upon which the district court relied show she knew.  Nor does she explain why she did not simply translate the documents and provide that translation to the district court.  Abdallah's "perfunctory treatment," of the issue, "as well as [her] raising this argument for the first time on appeal, waives" it.  Randall v. Laconia, NH, 679 F.3d 1, 5 (1st Cir. 2012); see also French v. Bank of N. Y. Mellon, 729 F.3d 17, 21 n.2 (1st Cir. 2013) (treating as waived issue raised for the first time on appeal and unsupported by relevant citation).

Abdallah next argues that she was unable to file suit against Bain in America before 2011 because, she alleges, she only discovered then, through Aurel's affidavit, certain additional facts that were necessary to bring her suit.  Specifically, Abdallah alleges that she learned for the first time in 2011 that a Bain representative attended all of the important meetings between Samsonite and Aurel and that "Samsonite's representative repeatedly sought [Bain's] assent to the main points of the scheme"

during those meetings. Abdallah also alleges that Aurel's affidavit "explained why . . . an officer of Bain's group[] had recruited . . . the owner of PR Consulting . . . in order to find the purchaser of the Hénin-Beaumont factory."

In fact, however, in her 2007 French pleadings Abdallah asserted that Bain provided the impetus for the fraudulent scheme, alleging that a company called PR Consulting was "hir[ed] by Samsonite on a proposal from one of its main shareholders, Bain Capital." As to why Bain caused the hiring of PR Consulting, Abdallah herself observed in 2007 that Bain latched onto the consultants "following the 'excellent work' carried out by the same protagonists (PR Consulting[ and] A[urel] . . .) on behalf of the Delsey Group, in which they performed the same fraudulent transaction, under the same conditions, each in the same role with same outcome . . . ."

To the extent there are any new details at all in Aurel's affidavit, they are not essential in order to plead the claims as well as she has pled them now. The existential nature of the corporate transaction, Bain's leadership of the group that acquired Samsonite, its role in proposing the consultants who put together the fraudulent sale, its documented direct intervention in the sale, and the precise details of the actual alleged fraud by Samsonite, were all known in 2007. Together these facts comprise

each of the categories of information contained in the present complaint.

Of course Abdallah learned some new information from Aurel. But a limitations period does not begin to run only when plaintiff learns all facts relevant to a claim. That is what discovery under the Federal Rules of Civil Procedure is for. Equitable tolling does not apply when a plaintiff has facts essential for the commencement of a suit (nor does it always apply when a plaintiff does not have such facts). See, e.g., Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 631 (1997) ("[T]he doctrine of equitable tolling is applicable only where the prospective plaintiff did not have, and could not have had with due diligence, the information essential to bringing suit."). Similarly, fraudulent concealment requires, at least, concealment of facts necessary to bring a cause of action. See, e.g., Stark 50 Mass. App. Ct. at 234 (holding that the statute of limitations is "not tolled [due to fraudulent concealment] if the plaintiff has actual knowledge of the facts giving rise to his cause of action").

Whether Abdallah now actually would have a claim against Bain but for the expiration of the limitations period we need not decide. Certainly, allegations that a parent directs or controls particular actions by a subsidiary are generally not enough to render the parent liable for all torts related to those actions. See Esmark, Inc. v. NLRB, 887 F.2d 739, 759 (7th Cir. 1989)

("Parents and dominant shareholders are almost always 'active participants' in the affairs of an owned corporation. And, in the usual case, the exercise of such control . . . does not result in the owner's personal liability."); <u>Scott</u> v. <u>NG U.S. 1, Inc.</u>, 450 Mass. 760, 770 (2008) (when determining whether a parent is liable for a subsidiary's torts, Massachusetts courts consider whether "one entity exercised 'pervasive control' over another, and whether 'confused intermingling' exists sufficient to disregard the corporate formalities"). Perhaps what Abdallah seeks to explore is a theory of liability for acting in concert. <u>See</u> Restatement (Second) of Torts § 876 (1979); <u>see also</u> <u>Taylor</u> v. <u>Am. Chemistry Council</u>, 576 F.3d 16, 35 (1st Cir. 2009) (discussing the application of section 876 in Massachusetts). Whatever the case may be, if there is a viable claim for pleading purposes now, then there was one as well in 2007.[2]

Abdallah argues finally that, even if she was aware of Bain's possible involvement in the fraudulent sale at the time she

---

[2] Because we conclude that nothing Abdallah learned in 2011 from Aurel was essential to bringing suit, we also need not consider whether she could have discovered that information through an earlier exercise of due diligence. <u>Cf.</u> <u>González</u> v. <u>United States</u>, 284 F.3d 281, 292 (1st Cir. 2002) (To rely on fraudulent concealment under Massachusetts law, a "plaintiff must have failed to discover these facts within the normal limitations period despite his or her exercise of due diligence."); <u>Protective Life Ins. Co.</u>, 425 Mass. at 631 (1997) ("[T]he doctrine of equitable tolling is applicable only where the prospective plaintiff . . . could not have had with due diligence[] the information essential to bringing suit.").

began the French litigation, Bain should be estopped from arguing that she had knowledge of her causes of action before 2011 because it told a French court that it was "a stranger to the contracts and to all the acts that pertained to the litigation." Abdallah, though, clearly did not rely on that general denial, as she pressed on with her claims in the French civil and labor courts. She therefore cannot make a viable estoppel argument. See Olsen v. Bell Tel. Labs., Inc., 388 Mass. 171, 176 (1983) (holding in the statute of limitations context that "[u]nless the defendants 'made representations they knew or should have known would induce the plaintiff to put off bringing suit and . . . the plaintiff did in fact delay in reliance on the representations,' there is no estoppel" (quoting White v. Peabody Constr. Co., 386 Mass. 121, 134-135 (1982))).

And, even if Bain had known Abdallah would rely on Bain's general denial and if Abdallah had in fact done so, she cites no authority, nor are we aware of any, for the proposition that a lie told in defense of a suit tolls the running of the limitations period where the plaintiff suspects the truth and persists with the suit. The better recourse, upon discovering such a lie, is to return to the original forum and seek to have the case reopened. In any event, we need only hold here that Bain's general assertion that it was a "stranger to" the Samsonite transaction, which assertion neither contested the specific facts known by Abdallah,

-15-

nor persuaded her to drop her suit against Bain, provides no basis for tolling the statute of limitations.

## IV. Conclusion

For the foregoing reasons the judgment of the district court is <u>affirmed</u>.

<u>So ordered</u>.