**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

**BAP NO. MW 20-037**

**Bankruptcy Case No. 19-40426-EDK**
**Adversary Proceeding No. 19-04036-EDK**

**SUSAN SCUBLA,**
**f/k/a Susan Hentschel,**
**Debtor.**

**SUSAN SCUBLA,**
**f/k/a Susan Hentschel,**
**Plaintiff-Appellant,**

**v.**

**NEW REZ, LLC,**
**d/b/a Shellpoint Mortgage Servicing, f/k/a New Penn Financial, LLC, and**
**PCSB Bank, f/k/a Putnam County Savings Bank,**
**Defendants-Appellees.**

**Before**
**Finkle, Harwood, and Cary,**
**United States Bankruptcy Appellate Panel Judges.**

**Michael B. Feinman, Esq., on brief for Plaintiff-Appellant.**
**Joshua A. Burnett, Esq., on brief for Defendant-Appellee, New Rez, LLC.**
**No brief submitted for Defendant-Appellee, PCSB Bank.**

**August 11, 2021**

**Harwood, U.S. Bankruptcy Appellate Panel Judge.**

The chapter 11 debtor, Susan Scubla, f/k/a Susan Hentschel (the "Debtor"), commenced an adversary proceeding to avoid a mortgage in favor of New Rez, LLC, d/b/a Shellpoint Mortgage Servicing ("New Rez").[1]  The Debtor appeals from: (1) the Amended Order denying, in part, her motion for summary judgment and granting summary judgment sua sponte in favor of New Rez; and (2) the Partial Judgment in favor of New Rez.  For the reasons discussed below, we **AFFIRM** both rulings.

## BACKGROUND

### I.    Pre-Bankruptcy Events

The Debtor previously co-owned property in Wainscott, New York (the "Property") with her former spouse, Robert Hentschel ("Mr. Hentschel").  On November 13, 2003, the Debtor and Mr. Hentschel granted a mortgage on the Property (the "2003 Mortgage") to Washington Mutual Bank, FA ("Washington Mutual") which was recorded on November 25, 2003.  The 2003 Mortgage secured repayment of a $675,500 promissory note (the "2003 Note") signed only by Mr. Hentschel.[2]

On May 6, 2008, Mr. Hentschel signed a promissory note in favor of Washington Mutual in the amount of $417,000 (the "Consolidated Note").  On the same date, both the Debtor and Mr. Hentschel executed a Consolidated Mortgage in favor of Washington Mutual to secure repayment of the Consolidated Note.  The Consolidated Note and the Consolidated Mortgage were appended as exhibits C and D, respectively, to an "Extension[ ] and Modification

---

[1]  References to New Rez in the record sometimes appear as "NewRez."  For the sake of consistency, this opinion employs "New Rez" throughout.

[2]  The 2003 Note is not a part of the record and was never presented to the court below.  Its validity, however, is not at issue in this appeal.

Agreement" (the "Modification Agreement") (collectively with the Consolidated Note and the Consolidated Mortgage, sometimes the "2008 Instruments") executed by the Debtor and Mr. Hentschel on May 6, 2008.[3]  Recorded on May 23, 2008, the 2008 Instruments were intended to modify the terms of the 2003 Note and 2003 Mortgage.  No additional property was encumbered, and no additional funds were advanced.  With respect to the 2003 Note and the 2003 Mortgage, the Modification Agreement provided (in an unidentified person's handwriting) that the "New Reduced Principal Now due + owing" was $417,000.  The Modification Agreement also provided, in pertinent part:

II.  AGREEMENT TO COMBINE NOTES AND MORTGAGES

(A) By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages.  This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement.  This combining of notes and mortgages is known as a "Consolidation."
. . . .

III.  AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE

Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C.  The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder.  I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note.  The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.

IV. AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE

Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this

---

[3]  The Modification Agreement was originally captioned "Consolidation, Extension, and Modification Agreement"; however, the form document was altered, with the word "Consolidation" crossed out of the caption and the change initialed.

Agreement as Exhibit D.  The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property.  I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages.

The Modification Agreement defined "Notes" and "Mortgages" as those documents identified in the attached Exhibit A.  That exhibit, captioned "List of Mortgages, Notes, and Agreements," listed: (1) the Consolidated Mortgage; (2) the Consolidated Note; (3) the 2003 Note; and (4) the 2003 Mortgage.  Exhibit A also provided: "[T]he unpaid principal balance secured by [the 2003] Mortgage is . . . $477,416.42 which has been further reduced to $417,000.00."[4]

Thereafter, two additional documents relating to the Property were executed, each captioned "Satisfaction of Mortgage."  The first, dated May 23, 2008 and recorded June 17, 2008 (the "First Satisfaction"), provided in relevant part:

WASHINGTON MUTUAL BANK . . . , holder of a certain mortgage evidencing an indebtedness in the amount of $675,500.00 plus interest, whose parties, dates and recording information are below, does hereby acknowledge that it has received full payment and satisfaction of the same, and in consideration thereof, does hereby satisfy and discharge said mortgage.

The First Satisfaction set forth the names, dates, and recording information for the 2003 Mortgage as follows:

Mortgagor: ROBERT J[.] HENTSCHEL AND SUSAN HENTSCHEL
Mortgagee: WASHINGTON MUTUAL BANK, FA
Dated: 11/13/2003 Recorded: 11/25/2003 . . . .

The second document (the "Second Satisfaction"), dated May 26, 2016 and recorded on July 8, 2016 by JPMorgan Chase Bank, N.A, ("JPMorgan"), successor in interest to Washington Mutual, provided that:

JPMORGAN CHASE BANK . . . does hereby certify that a certain indenture of mortgage, bearing date of November 13, 2003, made and executed by ROBERT J.

---

[4]  The phrase, "which has been further reduced to $417,000.00," was handwritten.

HENTSCHEL AND SUSAN HENTSCHEL to WASHINGTON MUTUAL
BANK . . . to secure payment of the principal sum of $675,500.00 . . . and duly
recorded on November 25, 2003 . . . is PAID, and does hereby consent that the
same be discharged of record. . . .

    . . . .

List of Additional Mortgages, Consolidation Extension Modifications and
Assignments:

EXTENSION AND MODIFICATION AGREEMENT FROM ROBERT J.
HENTSCHEL AND SUSAN HENTSCHEL TO WASHINGTON MUTUAL
BANK, FA DATED MAY 6, 2008, RECORDED MAY 23, 2008 . . . .

JPMorgan subsequently assigned the 2003 Mortgage to New Penn Financial, LLC ("New

Penn") on July 30, 2018. Thereafter, New Penn changed its name to New Rez, LLC.

In December 2018, Mr. Hentschel transferred his interest in the Property to the Debtor.

Prior to that transfer, PCSB Bank, f/k/a Putnam County Savings Bank ("PCSB"), recorded

various judicial liens against Mr. Hentschel's interest in the Property.

## II.  Bankruptcy Proceedings

The Debtor filed a chapter 11 bankruptcy petition in March 2019. Several months later,

the Property was sold pursuant to § 363, with existing liens attaching to the proceeds of the sale.[5]

### A.  The Adversary Proceeding

In August 2019, the Debtor commenced an adversary proceeding against multiple

defendants, including New Rez and PCSB, to determine the extent, priority, and validity of their

secured claims against the Property. In her complaint, the Debtor's only allegation against New

Rez was that:

New Rez, claiming to be holder of a mortgage on the Property, [wa]s entitled to
no proceeds from the sale of the Property due to the fact that the mortgage it held

---

[5] All references to "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532,
unless otherwise noted. All references to "Rule" are to the Federal Rules of Civil Procedure, and all
references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

on the Property ha[d] been discharged by it, and the underlying promissory note was executed only by the Debtor's ex-husband, Robert.[6]

The Debtor alleged PCSB was entitled to proceeds from the sale of the Property only to the extent its judicial liens attached to Mr. Hentschel's interest in the Property before he transferred it to the Debtor. In her prayer for relief, the Debtor asked the court to determine that she was entitled to one half of the sale proceeds.

### B. The Motion for Summary Judgment

In January 2020, the Debtor filed a motion for summary judgment against New Rez and PCSB (the "Summary Judgment Motion"). There, for the first time, she referenced the Modification Agreement, referring to it as a "restructure" of the 2003 Mortgage, and the First Satisfaction. Her sole argument advanced in the Summary Judgment Motion was one she had neglected to make in the complaint—that under § 544, she assumed the status of a "lien creditor and [ ] bona fide purchaser" and, as such, could avoid the lien of New Rez as an unperfected lien and preserve it for the benefit of the bankruptcy estate under § 551.[7] She did not elaborate, however, on the legal basis for her theory that New Rez's lien was unperfected. Nonetheless, the Debtor asked the court to "grant her summary judgment . . . and to preserve the lien of New Rez for the benefit of the estate."

---

[6] In the Summary Judgment Motion, the Debtor did not explicitly identify the lien she sought to avoid. It appears, however, that she was attempting to avoid the 2003 Mortgage, as modified by the Modification Agreement—a reading which seems consistent with the bankruptcy court's interpretation of the Summary Judgment Motion.

[7] Although the Debtor mentioned that the 2003 Note was executed only by Mr. Hentschel, she did not assert that as grounds for the entry of summary judgment in her favor.

## C. Opposition of New Rez

New Rez opposed the Summary Judgment Motion, arguing there existed a genuine issue of material fact as to whether the Consolidated Mortgage remained "in full force and effect." Citing <u>Benson v. Deutsche Bank National Trust, Inc.</u>, 970 N.Y.S.2d 794 (App. Div. 2013), New Rez argued that under New York law, the 2003 Mortgage and the 2008 Modification Agreement retained their "independence and effectiveness." New Rez asserted that, consistent with <u>Benson</u>, the Modification Agreement was "an accommodation between the contracting parties to provide a single enforceable lien that nevertheless create[d] rights that [we]re independently enforceable." Additionally, New Rez argued that the First Satisfaction and Second Satisfaction did not discharge the Debtor's underlying obligation to New Rez, as New York "Consolidated Laws Chapter 50, Article 8, § 275 expressly states that mortgage discharges made in the context of a modification to an existing loan do not act as a release of the underlying debt . . . ."

## D. The Debtor's Reply and Supplemental Statement

In her Reply, the Debtor argued that the Modification Agreement was included within the scope of obligations extinguished by the Second Satisfaction. As ordered by the court, the Debtor also submitted a Supplemental Statement addressing "the form" of the Second Satisfaction. The Debtor maintained the Second Satisfaction complied with the requirements of Section 258 of the New York Real Property Law. She further argued Section 321 of the New York Real Property Law permits the recording of a mortgage discharge that discharges multiple documents.

## E. The Amended Order, the Amended Memorandum of Decision, and the Partial Judgment

After hearings, on October 20, 2020, the bankruptcy court entered the Amended Order denying, in part, the Summary Judgment Motion and granting summary judgment sua sponte in

favor of New Rez (the "Amended Summary Judgment Order"). The Amended Summary Judgment Order provided that the Consolidated Mortgage "ha[d] not been discharged and remain[ed] in full force and effect." As the Debtor and PCSB had reached an agreement contingent upon the outcome of the Summary Judgment Motion, the court reserved the PCSB claims "for later determination."

In its accompanying Amended Memorandum of Decision, the court distilled the Debtor's various arguments asserted at different stages of the proceedings into three theories regarding the status of the Consolidated Mortgage. First, the court observed, "[i]n the complaint, at oral argument, and in her reply brief, the Debtor argued that the specific reference to the Modification Agreement in the Second Satisfaction included the Consolidated Mortgage within the scope of its satisfaction and discharge." Second, "the Debtor also asserted in the complaint that no sale proceeds should be distributed on account of the Consolidated Mortgage because only [Mr. Hentschel], and not the Debtor, signed the Consolidated Note." Third, in the Summary Judgment Motion, but not in the complaint, the Debtor alleged that the Consolidated Mortgage was "avoidable as an unperfected lien under § 544 and [could] be preserved for the benefit of the bankruptcy estate pursuant to § 551."

The bankruptcy court rejected each of the Debtor's arguments in turn. First, the court "note[d] that the Second Satisfaction [did] not specifically reference the Consolidated Mortgage, but instead reference[d] the Modification Agreement." The court went on to state, however:

> [A]ssuming (without deciding) that the reference to the Modification Agreement would include the Consolidated Mortgage (attached to the Modification Agreement as Exhibit D), that reference is not included in the clause which specifically describes the lien that has been paid and should be deemed discharged.

8

Instead, the reference to the Modification Agreement appears in a section titled "List of Additional Mortgages, Consolidation Extension Modifications and Assignments." A strained reading may lead one to conclude, as the Debtor does, that the documents referenced in that section are additional encumbrances that are to be discharged. However, in addition to mortgages and consolidation agreements, that section also refers to assignments—instruments that merely transfer ownership of other documents and are *not* subject to "discharge." The Court thus reads the reference to the Modification Agreement in the Second Satisfaction as merely setting forth other documents of record that affect the Property, and not purporting to discharge or deem satisfied the terms of the Consolidated Mortgage.

Second, with respect to the Debtor's argument concerning her personal liability, the bankruptcy court stated:

> The Debtor presented no legal argument in support of a claim that the mere fact that the Debtor did not sign the Consolidated Note renders the Consolidated Mortgage, which she *did* sign, unenforceable against the Property. And the Court has found none. Instead, under New York law "it is not necessary that an obligation involve personal liability in order for a mortgage to remain valid . . . ." Deutsche Bank Tr. Co. Americas v. Vitellas, 131 A.D.3d 52, 62, 13 N.Y.S.3d 163, 172 (2015) (holding that discharge of personal liability in bankruptcy proceeding does not affect enforceability of mortgage against property).

Finally, the court observed that the Debtor's § 544 and § 551 arguments were raised for the first time in the Summary Judgment Motion and subject to rejection on that ground. Even assuming those arguments "should be entertained" despite their tardiness, the court stated, the Debtor "failed to articulate how [§ 544 and § 551] would allow the estate to avoid and preserve the Consolidated Mortgage."

Based on the foregoing, the court denied, in part, "the Debtor's request for summary judgment with regard to the Consolidated Mortgage," and granted summary judgment sua sponte in favor of New Rez. In a separate Partial Judgment entered on the same date, the court reiterated that judgment was entered in favor of New Rez and against the Debtor, and explicitly

9

ruled: "Pursuant to Fed. R. Civ. P. 54(b), made applicable by Fed. R. Bankr. P. 7054(a), . . . there is no just reason for delay and this judgment is final as to New Rez . . . ."[8]

This appeal followed.

## POSITIONS OF THE PARTIES

### I.     The Debtor

The Debtor maintains that the Consolidation Mortgage was "nothing more than the restructure of existing debt," and that the only purpose of the Modification Agreement was "to avoid the New York state mortgage tax," not to create a new mortgage. She insists there was only one mortgage on the Property—the 2003 Mortgage, as modified in 2008—and it was extinguished by the First Satisfaction in July 2008. "The recording of the Second Satisfaction in 2016 [only] clarified what was accomplished in 2008," the Debtor further argues.[9] She maintains that the Second Satisfaction explicitly "referenced as satisfied *both* the 2003 Mortgage and the 2008 [Modification Agreement]." (emphasis added).

To buttress her position that the Second Satisfaction "effectuated a complete discharge of the Debtor's obligations," the Debtor argues that the Second Satisfaction complied with the New York statute permitting the discharge of multiple documents via a single recording:

> The Second Satisfaction followed Section 321 of the New York Property Law by discharging multiple documents, the 2003 Mortgage (even though already discharged in 2008) and the 2008 Modification Mortgage. The EMA [(i.e., the Modification Agreement)] was listed separately, as required, in a separate paragraph from the 2003 Mortgage, with the requisite recording information including the recording date, and the book and page reference.

---

[8] Although the Debtor appeals from the Partial Judgment, she does not challenge the "no just reason for delay" determination.

[9] We note that this argument is at odds with the Debtor's suggestion elsewhere in her appellate brief that the recording of the First Satisfaction must have been a mistake.

10

**II.     New Rez**

New Rez maintains that the 2003 Mortgage and the 2003 Note were "consolidated . . . into a new and independently enforceable lien evidenced by the Consolidated Mortgage." To accomplish this, New Rez maintains, the parties adapted "commonly utilized forms" and consequently the 2008 Instruments did not look like "a traditional consolidation." For instance, the parties crossed out the word "Consolidation" in the title of the Modification Agreement while adding the word "Consolidated" to the title of the mortgage accompanying that agreement. Despite these "confusing and . . . contradictory" changes, New Rez argues, the parties "left intact" certain terms in the Modification Agreement that "effectuate[d] a consolidation of the original 2003 instruments," including the following:

> III. AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE
>
> Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note". . . . The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder. . . . The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.
>
> IV. AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE
>
> Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" . . . . The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property. I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages.

New Rez contends that the 2008 Instruments—especially Paragraph IV of the Modification Agreement—unambiguously express "the parties' intent to create a new mortgage by the execution and recording of the Consolidated Mortgage."

11

New Rez further asserts that the First Satisfaction and Second Satisfaction discharged only the 2003 Mortgage and had no effect upon the Consolidated Mortgage. In fact, New Rez emphasizes, neither the First Satisfaction nor the Second Satisfaction referenced the Consolidated Mortgage.

New Rez challenges the Debtor's argument that the 2008 Instruments were recorded for the "parties' convenience in order to avoid a double taxation," arguing:

> [T]here was no additional money lent that would give rise to the assessment of a tax. In fact, the principal balance was reduced by the terms of the 2008 [Instruments], not increased. The 2008 [Instruments] did not merely serve a tax-related purpose but created a new lien on the Property.

Finally, New Rez disputes the notion that the Second Satisfaction complied with Section 321 of the New York Real Property Law and thus effectively "discharged more than one document." New Rez maintains that that legislation does not even apply to consolidation mortgages, arguing that the word "consolidate" is "missing from the language of the statute."[10]

For the foregoing reasons, New Rez asks us to affirm.[11]

## APPELLATE JURISDICTION

We may hear appeals from final judgments, orders, and decrees of the bankruptcy court. 28 U.S.C. §§ 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020); Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692 (2015). "An order granting summary judgment is a final order where no counts against any defendants remain." Encanto Rests., Inc. v. Aquino Vidal (In re Cousins Int'l Food, Corp.), 565 B.R. 450, 458 (B.A.P. 1st Cir. 2017)

---

[10] This argument is belied by a plain reading of the statute. See N.Y. Real Prop. Law § 321(3) (McKinney 2021) (referencing the discharge of consolidated mortgages).

[11] On appeal, New Rez appears to abandon its prior reliance on Benson, as there is no mention of that case in its brief.

(citation omitted) (internal quotation marks omitted); see also Bullard, 135 S. Ct. at 1694 (stating an order granting summary judgment is a final appealable order). Rule 54(b), made applicable to bankruptcy proceedings by Bankruptcy Rule 7054, however, provides that "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

Here, the bankruptcy court granted partial summary judgment in favor of New Rez and "reserv[ed] the PCSB claims for later determination."[12] Citing Rule 54(b), the court explicitly determined that there was "no just reason for delay and th[e] judgment [wa]s final as to New Rez . . . ." In its Amended Memorandum of Decision, the court explained:

> As the Debtor and PCSB have reached an agreement contingent upon the outcome of the Summary Judgment Motion with regard to the Consolidated Mortgage, this Amended Memorandum and the associated Amended Order will address only the issue of whether the Consolidated Mortgage remains a valid and enforceable lien against the Property.

In this manner, the court satisfied the requirement of Rule 54(b). See Fed. R. Civ. P. 54(b); see also Bos. Prop. Exch. Transfer Co. v. Iantosca, 720 F.3d 1, 7 (1st Cir. 2013) (stating "some concise findings 'will likely be needed' to explain why there is no just reason for delay") (citation omitted). In light of the foregoing, we have jurisdiction to hear this appeal.

## STANDARD OF REVIEW

Appellate courts review orders granting summary judgment de novo. See Bates v. CitiMortgage, Inc., 844 F.3d 300, 303 (1st Cir. 2016); Hannon v. ABCD Holdings, LLC (In re Hannon), 839 F.3d 63, 69 (1st Cir. 2016).

---

[12] The bankruptcy court's docket indicates that default judgments entered against the remaining defendants—Town of East Hampton, New York, Casola Well Drillers, Inc., and Mr. Hentschel—in February 2021. See TD Bank, N.A. v. LaPointe (In re LaPointe), 505 B.R. 589, 591 n.1 (B.A.P. 1st Cir. 2014) (stating "we may take judicial notice of the bankruptcy court's docket and imaged papers").

## SCOPE OF THE APPEAL

At the outset, we are confronted with a discrepancy between the arguments set forth in the Summary Judgment Motion and those advanced in the Debtor's appellate brief. In the Summary Judgment Motion, the Debtor's single argument was that the Consolidated Mortgage was avoidable as an unperfected lien under § 544 and could be preserved for the benefit of the bankruptcy estate pursuant to § 551, with only a passing reference to the absence of the Debtor's signature on the 2003 Note. In her appellate brief, the Debtor makes almost no mention of § 544, and is silent as to both § 551 and the absence of her signature on the 2003 Note. Her exclusive focus is on whether the Consolidated Mortgage survived the First Satisfaction and the Second Satisfaction. It is well established in the First Circuit that failure to brief an issue waives the issue. See Tower v. Leslie-Brown, 326 F.3d 290, 299 (1st Cir. 2003) ("[W]e have made it abundantly clear that failure to brief an argument does, in fact, constitute waiver for purposes of appeal.") (citations omitted). Therefore, the Debtor's unbriefed § 544 and § 551 arguments—the primary arguments made in the Summary Judgment Motion—are waived. Consequently, we need not consider them. See Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 29 (1st Cir. 2015) ("Our precedent is clear: we do not consider arguments for reversing a decision . . . when the argument is not raised in a party's opening brief.") (citation omitted).

This leaves the Debtor's contention that the First Satisfaction and the Second Satisfaction extinguished the lien of New Rez. The problem, however, is that the Debtor never made any arguments involving the First Satisfaction in the Summary Judgment Motion, her Reply, or the Supplemental Statement.[13] On this record, it appears that the first argument advanced by the

---

[13] Whether the Debtor made such an argument during any hearing on the Summary Judgment Motion is unknown based on this record, as no transcripts were provided.

Debtor relating to the First Satisfaction appears in her appellate brief. As a result, that argument is also waived. See Abdallah v. Bain Capital LLC, 752 F.3d 114, 120 (1st Cir. 2014) (stating arguments made for the first time on appeal are waived). We can, therefore, properly limit our review to the Debtor's argument, set forth in her Reply, that the lien of New Rez is no longer viable because of the recording of the Second Satisfaction.[14]

## DISCUSSION

### I. The Applicable Standards

#### A. The Summary Judgment Standard: Rule 56

"In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056" which "incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure." Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 762 (1st Cir. 1994) (citations omitted); see also Soto-Rios v. Banco Popular de P.R., 662 F.3d 112, 115 (1st Cir. 2011). Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is 'no genuine issue as to any material facts;' as well as that it is 'entitled to judgment as a matter of law.'" Magríz-Marrero v. Unión de Tronquistas de P.R., Local 901, 933 F. Supp. 2d 234, 245 (D.P.R. 2013) (citation omitted).

Rule 56(f)(3) permits the court to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."

---

[14] Still, for the sake of completeness and to understand the evolution of the parties' rights and obligations, our discussion makes reference to the First Satisfaction.

Fed. R. Civ. P. 56(f)(3). "The law in this circuit is well established: a party that moves for summary judgment runs the risk that if it makes a woefully inadequate showing, not only might its own motion for summary judgment be denied, the court may *sua sponte* order summary judgment against the movant." Ambit Corp. v. Delta Airlines, Inc., 707 F. Supp. 2d 74, 78 (D. Mass. 2010) (citing Sanchez v. Triple-S Mgmt., Corp., 492 F.3d 1, 7-9 (1st Cir. 2007); Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 29-30 (1st Cir. 1996)).

> Before considering granting *sua sponte* summary judgment, however, certain conditions must be met. Specifically, to "ensure the targeted party has an adequate opportunity to dodge the bullet," a court may only enter summary judgment *sua sponte* if: (1) fact discovery is sufficiently advanced that the parties enjoyed a reasonable opportunity to glean the material facts, and (2) the targeted party has appropriate notice and a chance to present its evidence on the essential elements of the claim.

Id. (citation omitted). In the case at bar, the sua sponte nature of summary judgment has not been challenged. Indeed, the record reflects that the Debtor enjoyed a reasonable opportunity to glean the facts and present her case. Therefore, our examination focuses on the substantive aspects of the grant of summary judgment, not the procedural.

**B.      Relevant Contract Interpretation Principles**

Substantively, this appeal involves the intersection of principles of contract interpretation with certain principles of law governing real estate mortgages. The parties assert that the outcome of this appeal turns on the Modification Agreement. Our understanding of the Modification Agreement is governed by principles of contract interpretation. "[T]he construction of private contracts is . . . a matter committed to state law[.]" HSBC Bank USA v. Branch (In re Bank of New Eng. Corp.), 364 F.3d 355, 363 (1st Cir. 2004) (citing Volt Info. Scis., Inc. v. Bd. of Trs., 489 U.S. 468, 474 (1989)). The nature and extent of a debtor's property interests are also determined according to relevant state law. Butner v. United States, 440 U.S.

16

48, 54-55 (1979). As the Property is located in New York, it follows that New York law governs here. Under New York law, courts "must interpret unambiguous contractual provisions in light of their plain and ordinary meaning." Phila. Indem. Ins. Co. v. Streb, Inc., 487 F. Supp. 3d 174, 184 (S.D.N.Y. 2020) (citation omitted) (internal quotation marks omitted). Courts "must interpret such terms in light of common speech and the reasonable expectations of a businessperson." Id. (citation omitted) (internal quotation marks omitted). "Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate[.]" Id. (citation omitted) (internal quotation marks omitted). "Only where the language is unambiguous may the district court construe it as a matter of law and grant summary judgment accordingly." Id. (citation omitted) (internal quotation marks omitted).

### C. Consolidation Agreements under New York Law

"Like any other agreement affecting outstanding mortgages, an agreement consolidating two or more mortgages on the same property may be duly effectuated by appropriate execution by the parties holding the encumbrances effected." 1 D. Kirk Drussel et al., Mortgages and Mortgage Foreclosure in New York § 17:13 (Aug. 2021 update) (citation omitted). "It is well settled that a consolidation and extension agreement is an instrument of convenience for the contracting parties only and cannot adversely affect . . . the priorities of any lien which has intervened between the respective dates of execution and delivery of the two consolidated mortgages . . . ." Dime Sav. Bank of N.Y., F.S.B. v. Levy, 615 N.Y.S.2d 218, 220 (1994) (citation omitted). "The consolidation and extension agreement cannot and does not confer upon the mortgage later in time the priority of lien which attaches to the mortgage earlier in time so as

17

to subordinate the intervening lien to the consolidation of both mortgages." Dominion Fin. Corp. v. 275 Wash. St. Corp., 316 N.Y.S.2d 803, 806 (1970). "On the contrary, the lien[s] of the two mortgages so consolidated, as to persons other than the contracting parties, continue as separate liens having differing priorities." Id. (citation omitted). One commentator has stated: "To the extent that it does not add to the charge already imposed upon the realty by the existing mortgages, a consolidation agreement is not deemed a mortgage." Drussel, supra, at § 17:13.

> However, [insofar] as it, or the instruments executed as part of the same transaction (such as an additional mortgage consolidated by the terms of the agreement with preexisting mortgages), creates a lien upon property not originally covered by the prior instruments, or one for a greater amount, it is considered a mortgage and subject to the payment of a recording tax.

Id.

## II.     The Standards Applied

In CIT Bank, N.A. v. Elliot, CV 15-4395 (JS) (ARL), 2019 WL 2436212 (E.D.N.Y. Feb. 5, 2019), a New York district court considered the effect of a consolidation agreement, consolidated note, and consolidated mortgage in the context of a motion brought by the plaintiff bank seeking, among other things, damages and a judgment of foreclosure. Using language resembling paragraph II of the Modification Agreement, the consolidation agreement at issue in CIT Bank provided:

> "By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages . . . [.] This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan."

Id. at *2 (citation omitted). Like paragraphs III and IV of the Modification Agreement, the consolidation agreement in CIT Bank further provided: "Lender and I agree that the terms of the Notes are changed and reinstated to be the terms of the 'Consolidated Note'"; and "Lender and I

18

agree that the terms of the Mortgages are changed and reinstated to be the terms of the

'Consolidated Mortgage.'" Id. (internal quotation marks omitted). The CIT Bank court

concluded that the consolidation agreement determined the rights and obligations of the parties

but that the underlying mortgages survived the execution of that agreement, stating:

> [W]here the parties have entered into a CEMA [(consolidation, extension, and modification agreement)] for purposes of consolidating existing mortgages, rather than refinancing those mortgages, the CEMA becomes the operative instrument governing the rights and obligations of the parties, however *the underlying mortgages are not extinguished*.

Id. at *3 (emphasis added). The court reasoned:

> This position is consistent with both Plotch v. Wells Fargo Bank, N.A., No. 17-CV-0309, 2018 U.S. Dist. LEXIS 3793, 2018 WL 344967, at *4 (E.D.N.Y. Jan. 9, 2018) (appeal filed)[15] (holding that consolidated mortgage supersedes the prior mortgages where the language of the CEMA so provides) and Nucci v. PHH Mortg. Corp., No. 14-CV-2683, 2016 U.S. Dist. LEXIS 34017, 2016 WL 1070815, at *4-5 (E.D.N.Y. Mar. 16, 2016) (finding that the parties' execution of a CEMA consolidating two existing mortgages and the promissory notes secured by them "did not extinguish or replace the two existing mortgages" where "no new money was included in the CEMA"), aff'd, 679 F. App'x 48 (2d Cir. 2017). The court in Nucci held that execution of the CEMA did not constitute a[ ] "new" mortgage because no money was included, however, "by signing the CEMA, Plaintiff agreed to be bound by its terms, as well as the documents annexed to it and to which it specifically referred, i.e., the Consolidated Mortgage." Id. at *13. As explained by the New York Court of Appeals, "[t]he courts recognize the well-settled principle that a consolidation 'agreement is an instrument of convenience for the contracting parties only.' A consolidation agreement, however, 'cannot adversely affect, impair or derogate the priorities of any lien which has intervened between the respective dates of execution and delivery of the two consolidated mortgages.' Rather, 'for purposes of determining priority when there is an intervening lien, the mortgages retain their separate-lien status.' In that scenario, the consolidation agreement would not be considered the 'first mortgage of record.'" Plotch v. Citibank, N.A., 27 N.Y.3d 477, 483, 34 N.Y.S.3d 394, 54 N.E.3d 66 (2016) (quoting Dime Sav. Bank of N.Y. v. Levy, 161 Misc[.] 2d 480, 615 [N.Y.S.] 2d 218 (Sup. Ct[.], Rockland County 1994)). The Court noted that where . . . there are no intervening liens the consolidation agreement governs. Id.
>
> The Court in Plotch noted that to hold "otherwise would simply . . . lead to only additional steps in the consolidation process." Plotch, 2018 U.S. Dist. LEXIS

---

15 The Second Circuit has since affirmed Plotch. See 758 F. App'x 221 (2d Cir. 2019).

19

3793, at *12 (citing Citibank, N.A., 27 N.Y.3d at 483-84, 54 N.E.3d 66[)] ("Banks . . . would simply take additional steps to satisfy the original mortgage, take out a new mortgage, and pay the additional fees required to achieve precisely the same result.")[ ]. . . .

Accordingly, the undersigned respectfully recommends that the CEMA, Consolidated Note and Consolidated Mortgage be deemed the operative instrument in this proceeding.

Id. (some alterations added).

CIT Bank is well-reasoned and grounded in New York precedent. Applying that holding to the facts of this case, it follows that the operative instrument here is the Modification Agreement and that its execution, standing alone, did not extinguish any mortgage. See id. Indeed, the similarity between the provisions of the Modification Agreement and the terms of the CIT Bank consolidation agreement are undeniable. Much like the agreement at issue in CIT Bank, the Modification Agreement combined the rights and obligations of the parties into one set of rights and obligations in paragraph II, and changed the terms of the original 2003 Note in paragraph III. Pursuant to paragraph IV of the Modification Agreement, "the terms of the Mortgages [we]re changed and restated to be the terms of the 'Consolidated Mortgage,'" which "secure[d] the Consolidated Note and . . . constitute[d] . . . a single lien upon the Property." Further, the Consolidated Mortgage "supersede[d] all terms, covenants, and provisions of the Mortgages."

The foregoing similarities between the Modification Agreement and the consolidation agreement in CIT Bank support a conclusion in this case that the Modification Agreement, by itself, did not extinguish the 2003 Mortgage and 2003 Note obligations, notwithstanding the parties' agreement to create a single lien. See CIT Bank, 2019 WL 2436212 at *3; see also Nucci, 2016 WL 1070815, at *5 (stating the parties agreed "to create a single lien with the CEMA . . . , but they did not extinguish or replace the two existing mortgages"); Bodden v.

20

Kean, No. 23250/2008, 2010 WL 8415297, at *2 (N.Y. Sup. Ct. Jan. 26, 2010) (finding the consolidation of two prior mortgages was "not a refinancing or replacement of an existing mortgage loan," but merely represented an "increase in the then-outstanding balance of the purchase money mortgage loan"), aff'd, 927 N.Y.S.2d 137 (App. Div. 2011). The status of those obligations changed with the execution of the First Satisfaction, however, which expressly discharged them. See Bechard v. Monty's Bay Recreation, Inc., 11 N.Y.S.3d 695, 696 (App. Div. 2015) (stating "that a subsequent note does not discharge the original indebtedness secured *unless there is an express agreement between the parties*") (emphasis added) (citations omitted). Specifically, the First Satisfaction provided:

> WASHINGTON MUTUAL BANK . . . , holder of a certain mortgage evidencing an indebtedness in the amount of $675,500.00 plus interest, . . . does hereby acknowledge that it has received full payment and satisfaction of the same, and in consideration thereof, does hereby satisfy and discharge said mortgage.

And, lest there be any doubt as to whether the obligations under the 2003 Note and 2003 Mortgage survived as to any transferee of those instruments, JPMorgan subsequently recorded the Second Satisfaction, which similarly provided, in relevant part:

> JPMORGAN CHASE BANK . . . does hereby certify that a certain indenture of mortgage, bearing date of November 13, 2003, made and executed by ROBERT J. HENTSCHEL AND SUSAN HENTSCHEL to WASHINGTON MUTUAL BANK . . . to secure payment of the principal sum of $675,500.00 . . . and duly recorded on November 25, 2003 . . . is PAID and does hereby consent that the same be discharged of record.

The First Satisfaction and Second Satisfaction unambiguously discharged the rights and obligations contained in the 2003 Note and the 2003 Mortgage. The same cannot be said, however, of the 2008 Consolidated Note and 2008 Consolidated Mortgage—the First Satisfaction and the Second Satisfaction had no effect on those instruments. For starters, the First Satisfaction was silent regarding the Consolidated Note and Consolidated Mortgage.

21

The Second Satisfaction was similarly silent regarding the Consolidated Note and Consolidated Mortgage, referring only to the Modification Agreement in a "List of Additional Mortgages, Consolidation Extension Modifications and Assignments." The Debtor's argument that the Second Satisfaction "explicitly referenced" the Modification Agreement "as satisfied" is therefore disingenuous. To use the words of the bankruptcy court, it would require a "strained reading" of the Modification Agreement to interpret its "list" of encumbrances as a list of *discharged* encumbrances. As no party has suggested that the terms of the Second Satisfaction are ambiguous, we are required to interpret the document's unambiguous contractual provisions in light of "their plain and ordinary meaning," interpreting "such terms in light of common speech and the reasonable expectations of a businessperson." Phila. Indem. Ins. Co., 487 F. Supp. 3d at 184 (citation omitted) (internal quotation marks omitted). A "businessperson" would not reasonably expect that a mere list of encumbrances—without reference to the 2008 Consolidated Mortgage or the 2008 Consolidated Note, or resort to any language typically associated with lien extinguishment—served to extinguish those obligations. Given the plain language of the Second Satisfaction referencing only the 2003 Mortgage, the Debtor's argument that the Second Satisfaction complied with Section 321 of New York Real Property Law permitting the discharge of multiple documents via a single recording—raised for the first time on appeal—would not alter the outcome of this analysis even if we were to consider it.

In sum, the bankruptcy court's rejection of the Debtor's interpretation of the Second Satisfaction is supported by the plain language of that document and applicable case law. Notwithstanding the Debtor's assertion to the contrary, the bankruptcy court's decision is not lacking in explanation or legal support. Thus, we conclude that the bankruptcy court committed no error when it ruled that "the Consolidated Mortgage remains a valid and enforceable lien

22

against the Property" and that New Rez, rather than the Debtor, was entitled to judgment as a matter of law.

## **CONCLUSION**

Based on the above analysis, we **AFFIRM** the Amended Summary Judgment Order and the Partial Judgment**.**